CASCO TOWNSHIP v STATE BOUNDARY COMMISSION

Docket No. 217621. Submitted September 6, 2000, at Detroit. Decided
       November 28, 2000, at 9:05 A.M. Leave to appeal sought.

    Petitioners, Casco Township and Columbus Township of St. Clair
       County and Lenox Township of Macomb County, petitioned the St.
       Clair Circuit Court to review the determination and order of the
       State Boundary Commission that approved the annexation by the
       city of Richmond of certain land located in the townships of Casco
       and Columbus. The commission was named as the respondent.
       Walter and Patricia Winkle, owners of part of the land that was the
       subject of the original annexation petition, and the city of Rich-
       mond intervened as respondents. In reaching its determination, the
       commission held that the agreement entered into between Colum-
       bus and Lenox Townships for the purpose of transferring control of
       a tract of land that included that portion of the land subject to the
       annexation petition that was in Columbus Township to Lenox
       Township pursuant to 1984 PA 425, MCL 124.21 et seq.; MSA
       5.4087(21) et seq. (Act 425 agreement), and the similar agreement
       between Casco and Lenox Townships with respect to a tract of
       land that included that portion of the subject land that was in
       Casco Township were not valid Act 425 agreements and thus did
       not bar the annexation of the subject land by the city. The commis-
       sion held that the townships had entered into the Act 425 agree-
       ments solely to preclude the city's annexation of the land and not
       for the sake of any economic development project, as was envi-
       sioned by the Legislature in its adoption of Act 425. The court,
       Daniel J. Kelly, J., affirmed the order and determination of the com-
       mission, concluding that the commission had the authority to
       determine the validity of the Act 425 agreements, that the commis-
       sion correctly concluded that the townships had entered into the
       agreements solely to avoid the city's annexation rather than for any
       economic development project as was envisioned by the enabling
       legislation, that the commission's decision was supported by com-
       petent, material, and substantial evidence on the whole record, and
       that the commission's decision was not arbitrary, capricious, or an
       abuse of discretion. The petitioners appealed by leave granted.

       The Court of Appeals held:

1. The State Boundary Commission was established as an independent authority with broad powers concerning annexations. The commission was given the power to determine the validity of petitions concerning annexation, being specifically given jurisdiction over petitions for annexation.

2. Act 425 provides a mechanism through which local units of government may conditionally transfer property by means of a written agreement by the affected local units. A duly filed Act 425 agreement is prima facie evidence of the conditional transfer. An Act 425 agreement that is "in effect" bars another method of annexation or transfer of any portion of the area that is the subject of the Act 425 agreement.

3. Because the statutory bar with respect to annexation exists only if there is an Act 425 agreement "in effect," and because of the broad grant of statutory authority to the commission over matters relating to the establishment of boundaries and annexations, the commission has authority and jurisdiction to decide the validity of Act 425 agreements that, if valid, would bar the commission's authority to process, approve, deny, or revise a petition or resolution for annexation. Absent the authority to determine the validity of Act 425 agreements, the commission would be unable to perform its statutory mandate to resolve annexation petitions.

4. Act 425 has as its stated legislative purpose for allowing the conditional transfer of control of land between local units of government by a signed agreement the establishment of an economic development project on the land that is subject to the transfer agreement. An economic development project is defined as improvements suitable for an industrial or commercial enterprise, housing development, or the protection of the environment. The commission found that the purpose of the conditional transfers pursuant to these agreements was not the furtherance of some economic development project as envisioned by the provisions of Act 425, but was rather merely to preclude the commission from exercising its statutory jurisdiction with respect to annexation petitions and to avoid future annexation of the subject land.

5. The circuit court did not err in finding that there was the necessary competent, material, and substantial evidence to support the commission's findings and that the commission did not abuse its discretion in concluding that the Act 425 agreements were shams and invalid, the statutory presumption of prima facie evidence of conditional transfer of the land having been rebutted.

6. The commission's decision to hold the Act 425 agreements invalid did not interfere with the petitioners' contract rights in violation of US Const, art I, § 10 or Const 1963, art 1, § 10.

Affirmed.

1. Boundaries — State Boundary Commission — Act 425 Agreements — Validity — Jurisdiction.

The State Boundary Commission has jurisdiction to determine whether an agreement entered into by local units of government pursuant to 1984 PA 425 for the conditional transfer of property from one unit of government to another is valid and enforceable so as to bar any other method of annexation or transfer (MCL 124.21 *et seq.*; MSA 5.4087[21] *et seq.*).

2. Boundaries — State Boundary Commission — Act 425 Agreements — Validity.

The State Boundary Commission may hold as invalid and without effect an agreement between two local units of government purportedly conditionally transferring control of certain land from one unit of government to the other pursuant to the provisions of 1984 PA 425 where the commission finds that the transfer was not for the purpose of establishing an economic development project but was rather merely to bar the future annexation of the subject land (MCL 124.21 *et seq.*; MSA 5.4087[21] *et seq.*).

*James V. Dubay,* for Casco Township and Columbus Township.

*Terry S. Welch,* for Lenox Township.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *George M. Elworth,* Assistant Attorney General, for State Boundary Commission.

*Freeman McKenzie* (by *Thomas L. Treppa*), for city of Richmond.

*Kerr, Russell and Weber, PLC* (by *Robert J. Pineau*), for Walter K. and Patricia A. Winkle.

Amici Curiae:

*Bauckham, Sparks, Rolfe, Lohrstorfer & Thall, P.C.* (by *John H. Bauckham*), for Michigan Townships Association.

*Eric D. Williams*, for Michigan Municipal League.

*Elwood L. Brown*, Corporation Counsel, and *Timothy K. Morris*, Assistant Corporation Counsel, for St. Clair County.

Before: GRIBBS, P.J., and NEFF and O'CONNELL, JJ.

O'CONNELL, J. Petitioners appeal by leave granted a circuit court order affirming a decision of the State Boundary Commission (the commission). We affirm.

### I. ISSUES

This case presents two issues of first impression. The first is whether the commission had the jurisdiction and authority to determine the legal validity of an agreement entered into pursuant to the provisions of 1984 PA 425, MCL 124.21 *et seq.*; MSA 5.4087(21) *et seq.* (Act 425 agreement). The second is whether competent, material, and substantial evidence supported the commission's determination that the Act 425 agreements were merely a pretext to avoid annexation.

### II. FACTS

At the time of the proceedings below, the Winkles owned a parcel of land that was situated in both Casco Township and Columbus Township, and that was close to the city of Richmond. The parcel was also near Lenox Township, which abuts both Casco Township and Columbus Township. In July 1996, the Winkles and other landowners in Casco Township and Columbus Township filed a petition with the State Boundary Commission seeking to annex approxi-

mately 157 acres of land into the city of Richmond, pursuant to the state boundary commission act, MCL 123.1001 *et seq.*; MSA 5.2242(1) *et seq.* According to the Winkles, they wished to develop their property commercially, and Richmond had the capacity to provide water, sewer, and other services immediately and at minimal cost, while the townships would not develop such capacity for several years. However, in November 1995, Columbus Township and Lenox Township had filed an Act 425 agreement that indicated an intent to transfer a portion of Columbus Township to Lenox Township. In January 1996, Casco Township and Lenox Township filed a similar agreement to transfer a portion of Casco Township to Lenox Township. These agreements covered the Winkles' land.

In November 1997, the commission concluded that the two Act 425 agreements did not meet the statutory criteria and approved the petition for annexation. The townships appealed to the circuit court, arguing that MCL 124.29; MSA 5.4087(29) absolutely barred any method of annexation or transfer of land covered in the Act 425 agreements and that the commission lacked the legal authority to determine the validity of Act 425 agreements in the first place.

Circuit Judge Daniel J. Kelly, in a written opinion, concluded that the commission had the authority to determine the validity of the Act 425 agreements and that, in this instance, the commission correctly concluded that the townships entered into the agreements solely to avoid the city's annexation and not for the sake of any development project that the enabling legislation envisioned. The court therefore concluded that the commission's decision was based on

"competent, material, and substantial evidence on the whole record," and was not arbitrary, capricious, or an abuse of discretion. This Court granted the townships leave to appeal.

### III. JURISDICTION

The first issue for our consideration is whether the State Boundary Commission exceeded its authority or jurisdiction when it undertook to decide the legal validity of the townships' Act 425 agreements. We conclude that it did not. This Court reviews the decisions of the State Boundary Commission in accordance with the Administrative Procedures Act, MCL 24.201 *et seq.*; MSA 3.560(101) *et seq. Midland Twp v State Boundary Comm*, 401 Mich 641, 671-672; 259 NW2d 326 (1977); *Chase v State Boundary Comm*, 103 Mich App 193, 203; 303 NW2d 186 (1981); MCL 123.1018; MSA 5.2242(18). Where an administrative agency exceeds its statutory authority or jurisdiction, the reviewing court should set aside the agency's decision or order if the agency prejudiced the petitioner's substantial rights. MCL 24.306(1)(b); MSA 3.560(206)(1)(b).

The legislative purpose behind the State Boundary Commission was to establish an independent authority with "broad powers concerning annexations" and to allow annexations to take place for the general benefit of the areas concerned, instead of for the private benefit of individuals. *Owosso Twp v Owosso*, 385 Mich 587, 590; 189 NW2d 421 (1971). Subsection 9(2) of the Home Rule City Act, 1909 PA 279, MCL 117.9(2); MSA 5.2088(2), provides that the commission has the power to determine "the validity of the petition or resolution" concerning annexation and

also recognizes the commission's duties concerning "processing and approving, denying, or revising a petition or resolution for annexation . . . ." MCL 123.1011a; MSA 5.2242(11a), setting forth procedures, provides, "The commission shall have jurisdiction over petitions or resolutions for annexation as provided in [MCL 117.9; MSA 5.2088]."

MCL 124.29; MSA 5.4087(29) states that where an Act 425 agreement "is in effect, another method of annexation or transfer shall not take place for any portion of an area transferred under the contract." Act 425 provides a mechanism through which "local units may conditionally transfer property" in a manner "controlled by a written contract agreed to by the affected local units." See MCL 124.22(1); MSA 5.4087(22)(1). MCL 124.30; MSA 5.4087(30) in turn provides that a duly filed Act 425 agreement "is prima facie evidence of the conditional transfer." Act 425 agreements thus allow municipalities conditionally to revise their borders without recourse to, or interference from, the commission.

At issue is the commission's role in determining whether an Act 425 agreement is valid for purposes of deciding whether the agreement bars the commission from entertaining a petition for annexation concerning the same land. The plain wording of MCL 124.29; MSA 5.4087(29), provides that "a contract under this act" presently "in effect" bars other forms of "annexation or transfer" of the affected territory. This language expressly requires an Act 425 agreement that is "in effect" and, therefore, necessitates a valid agreement. Consequently, this statutory bar to the commission's consideration of an annexation petition requires an agreement that fulfills the statutory crite-

ria, rather than a fictional agreement intended only to deprive the commission of jurisdiction.

The townships argue that either the circuit court should review the issue of jurisdiction de novo or that the circuit court should have sole jurisdiction to determine the validity of an Act 425 agreement. According to the townships, any document purporting to be an Act 425 agreement, once signed and filed according to the specified procedure, absolutely bars any action on the part of the commission concerning the same territory, without regard to the substance of the agreement. We disagree. In light of the broad grant of statutory authority to the commission over matters relating to the establishment of boundaries and annexations, we hold that the commission had the authority and jurisdiction to decide the validity of the Act 425 agreements. Logic dictates that the commission had the authority to consider the validity of two agreements that, if valid, would have barred its authority to process, approve, deny, or revise a petition or resolution for annexation. The commission would not otherwise have been able to perform its function of resolving the petition. See *Shelby Charter Twp v State Boundary Comm*, 425 Mich 50, 73-77; 387 NW2d 792 (1986) (the commission may proceed with an annexation petition where it has identified only "pro forma" or "de minimus" exercises of statutory measures that would otherwise supplant its jurisdiction); *Judges of the 74th Judicial Dist v Bay Co*, 385 Mich 710, 728-729; 190 NW2d 219 (1971) (an administrative agency is competent to determine its own jurisdiction). The commission's determination was thereafter subject to review in the circuit court. MCL 24.301; MSA 3.560(201), MCL 123.1018; MSA

5.2242(18); *Rudolph Steiner School of Ann Arbor v Ann Arbor Charter Twp*, 237 Mich App 721, 731; 605 NW2d 18 (1999).

### IV. "SHARK REPELLENT"

The second issue for our consideration is whether the commission erred in concluding that the underlying agreement was illusory and therefore not valid. We review the commission's findings for whether competent, material, and substantial evidence existed to support the commission's findings. See *Midland Twp, supra* at 672; MCL 24.306(1)(d); MSA 3.560(206)(1)(d).

Act 425 agreements are statutorily authorized to allow local units to establish "an economic development project," MCL 124.22(1); MSA 5.4087(22)(1), which is statutorily defined as follows:

> "Economic development project" means land and existing or planned improvements suitable for use by an industrial or commercial enterprise, or housing development, or the protection of the environment, including, but not limited to, groundwater or surface water. Economic development project includes necessary buildings, improvements, or structures suitable for and intended for or incidental to use as an industrial or commercial enterprise or housing development; and includes industrial park or industrial site improvements and port improvements or housing development incidental to an industrial or commercial enterprise; and includes the machinery, furnishings, and equipment necessary, suitable, intended for, or incidental to a commercial, industrial, or residential use in connection with the buildings or structures. [MCL 124.21(a); MSA 5.4087(21)(a).]

The circuit court, in reviewing the commission's findings, noted that an advertisement soliciting peti-

tion signatures in opposition to the annexation contained the statement, "Help us in the preservation of farmland and open space." The court continued:

MCL 124.21(a); MSA 5.4087(21)(a) . . . requires that a valid Act 425 Agreement must provide for improvements to the property necessary for the planned industrial, commercial or housing development. The . . . Commission requested information from the townships by way of questionnaires regarding the provision of water and sewer services. The Columbus Township questionnaire indicated that 1) Columbus did not provide public water service; 2) Columbus did not provide sanitary sewer service, and 3) it could provide water services by the "fall of 1997" and that "Sewers [were] under study." The Casco Township questionnaire answers stated that 1) Casco did not provide public water services or sanitary sewer services, 2) public water services could be provided by the "fall of 1997"; 3) Casco did not provide an answer regarding when sanitary sewer services could be provided. They apparently indicated that water would be available to the Act 425 Agreement land, however, they do not indicate when water could be available to the annexed property. . . . Thus, the information presented to the . . . Commission for industrial, commercial, or industrial development may have been found to be more illusory than genuine.

The . . . Commission further determined that the Act 425 Agreements were simply agreements to share services and not a true transfer of property. The . . . Commission stated that "the parties did not provide evidence of such transfer, which minimally could have included a showing of a transfer to Lenox Township of property tax records and voting records of any residents in the Act 425 area."

The circuit court concluded that the townships had not entered into any real plan for economic development. The court further concluded that the purpose of the agreements was to bind nonparties in derogation of their rights, to limit the authority of the com-

mission, and to "ward off any attempts by municipalities to annex a portion of the Townships."

While the precise reasoning behind the commission's disregard of the Act 425 agreements is not entirely clear, it apparently concluded that the townships entered into the conditional transfers as an act of subterfuge intended to preclude the commission's jurisdiction and to avoid future annexation. The circuit court, after reviewing the administrative record, agreed with the commission and dubbed the Act 425 agreements "shark repellent."

The townships do not dispute the specific factual findings underlying the commission's conclusions. Rather, the townships argue that transfer of neither tax records nor voting records is required for a valid transfer of land under an Act 425 agreement. However, the commission did not rule that they were necessary, only that they were relevant considerations. The townships also emphasize MCL 124.30; MSA 5.4087(30), which provides that the filing of an Act 425 agreement constitutes "prima facie evidence" of the existence of the conditional transfer of land. The statute, however, does not preclude a finding that the agreement was a sham. In our view, the parties who had filed the annexation petition with the commission developed a record that supported the commission's conclusion that the agreements were essentially an attempt to avoid annexation. Further, the Act 425 agreements themselves only vaguely contemplated a plan of development at some point in the future. On the basis of the factors discussed in Judge Kelly's carefully considered opinion, we conclude that competent, material, and substantial evidence existed to support the commission's conclusion that the two Act

425 agreements were illusory in nature and that the townships entered into them in order to avoid future annexation.

### V. CONTRACT RIGHTS

The townships' final contention is that the commission's decision interfered with their contract rights in violation of US Const, art I § 10, and Const 1963, art 1, § 10. "Vested rights acquired under contract may not be destroyed by subsequent State legislation or even by an amendment of the State Constitution." *Campbell v Judges' Retirement Bd*, 378 Mich 169, 180; 143 NW2d 755 (1966). This argument fails. No subsequent legislation or constitutional amendment interfered with the townships' Act 425 agreements.

Affirmed.