GENESIS CENTER, PLC v COMMISSIONER OF FINANCIAL
AND INSURANCE SERVICES

Docket No. 219867. Submitted November 8, 2000, at Lansing. Decided
June 29, 2001, at 9:00 A.M.

Genesis Center, P.L.C., a freestanding outpatient surgical facility, and
its physician-owners brought an action in the Ingham Circuit Court
against the Commissioner of Financial and Insurance Services, for-
merly the Commissioner of Insurance, seeking equitable relief and
a declaratory judgment compelling the commissioner to issue a
cease and desist order enjoining Blue Cross and Blue Shield of
Michigan (BCBSM) from alleged ultra vires and illegal conduct. The
court, Lawrence M. Glazer, J., granted summary disposition in
favor of the commissioner, finding, in part, that the court was with-
out jurisdiction to issue a declaratory judgment in the matter. The
plaintiffs appealed.

The Court of Appeals *held*:

The court properly dismissed the claims seeking declaratory
relief because the plaintiffs failed to exhaust their administrative
remedies and no case of actual controversy existed. The plaintiffs'
request for a cease and desist order must be denied.

1. The commissioner is directed by the Nonprofit Health Care
Corporation Reform Act, MCL 550.1101 *et seq.*, to regulate and
supervise nonprofit health care corporations like BCBSM. Although
the act allows the plaintiffs to bring an action in the Ingham Circuit
Court, the relevant subsection, MCL 550.1619(3), does not allow the
court to conduct the same type of review that the commissioner
has authority to conduct under the act. Subsection 619(3) presents
an appropriate avenue by which the circuit court can compel the
commissioner to enforce the act. The circuit court would exceed
its authority if it were to conduct the comprehensive review that
the plaintiffs sought.

2. The plaintiffs failed to prove that an actual controversy existed
that would give the court subject-matter jurisdiction to enter a
declaratory judgment. The review process set out in the Nonprofit
Health Care Corporation Reform Act provides the plaintiffs the
ability to preserve their legal rights.

3. The court properly granted summary disposition because the commissioner had no clear legal duty under the act to issue a cease and desist order and because the statutory review proceedings that the commissioner did conduct in this matter present an alternate and adequate remedy.

Affirmed.

1. HEALTH — NONPROFIT HEALTH CARE CORPORATION REFORM ACT — ENFORCEMENT ACTIONS.

The Nonprofit Health Care Corporation Reform Act provides that any person may bring an action in the Ingham Circuit Court against the Commissioner of Financial and Insurance Services seeking declaratory and equitable relief against the commissioner or to compel the commissioner to enforce the act or rules promulgated under the act; the act does not authorize the circuit court to conduct the same comprehensive review of a provider class plan that the commissioner has authority to conduct pursuant to the act; rather, the court is authorized to compel the commissioner to enforce the act by conducting such a provider class plan review (MCL 550.1504, 550.1509, 550.1619[3]).

2. COURTS — JURISDICTION — ACTUAL CONTROVERSY.

A circuit court lacks subject-matter jurisdiction to enter a declaratory judgment where no actual controversy exists; an actual controversy exists when a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve the plaintiff's legal rights (MCR 2.605[A][1]).

*Wachler & Associates, P.C.* (by *Andrew B. Wachler, Phyllis A. Avery,* and *Louise A. Kirk*), for the plaintiffs.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Larry F. Brya,* Assistant Attorney General, for the defendant.

Before: DOCTOROFF, P.J., and HOEKSTRA and MARKEY, JJ.

MARKEY, J. Plaintiffs appeal by right the circuit court's orders granting summary disposition in favor of defendant Commissioner of Financial and Insurance Services, formerly the Commissioner of Insur-

ance, and denying their motion for reconsideration after the circuit court ruled that it was without jurisdiction to issue a declaratory judgment in this matter. We affirm.

## I. FACTS

The individual plaintiffs are physicians who own and operate a freestanding outpatient surgical facility in Lansing named Genesis Center, P.L.C. (Genesis). The individual physicians are surgeons who formed Genesis to provide surgical services to residents of Ingham County and its surrounding areas. Genesis was awarded provisional accreditation as an outpatient surgical facility by the Joint Commission on Accreditation of Health Care Organizations and the United States Department of Health and Human Services accepted Genesis as a participating provider of ambulatory surgical services for the purposes of Medicare in July 1997. In August 1997, Genesis was licensed by the state of Michigan as a freestanding surgical outpatient facility.

In September 1997, Genesis sought to become a participating provider with Blue Cross and Blue Shield of Michigan (BCBSM). In an informational letter, BCBSM stated that in order for Genesis to qualify as a freestanding ambulatory surgery facility,[1] it must provide surgery in a minimum number of surgical categories and meet BCBSM's evidence of necessity (EON) criteria. The letter stated:

---

[1] An ambulatory surgery facility is a facility, other than the office of a physician, dentist, podiatrist, or other private practice office, that offers surgical procedures and related care that does not require in-patient hospital care.

EON is a planning methodology that determines the amount of provider services needed in a specified geographical area and allows BCBSM to participate with the minimum number of providers required to adequately deliver services. If BCBSM determines that there are sufficient providers in a service area, BCBSM will not approve new facilities for participation until existing providers withdraw as a BCBSM provider or the number of services required in an area increase.

EON is one of the qualifications that all [ambulatory surgery facilities] must meet in order to participate with BCBSM. The requirement ensures that additional surgical capacity is approved only in service areas with insufficient surgical capacity. EON is particularly important for controlling the number of [ambulatory surgery facility] providers to limit health care costs and accomplishes cost containment objectives.

The BCBSM letter then detailed the EON formula, which took into account BCBSM's determination of the current demand for outpatient operating rooms in the proposed service area, the existing capacity for outpatient surgery in both hospitals and ambulatory surgery facilities in the proposed service area, and the current need for additional outpatient surgery rooms.

BCBSM subsequently denied Genesis' request to become a participating ambulatory surgery facility provider because it found that there was an excess of operating room capacity in Ingham County. According to BCBSM, regardless of Genesis' compliance with BCBSM's other qualification standards, if Genesis could not demonstrate evidence of need, BCBSM would not grant participating provider status. As a result of participating provider status being denied to Genesis, BCBSM refused to pay Genesis for services provided by Genesis to BCBSM subscribers and refused to reim-

burse its subscribers for the bills that subscribers had paid for services provided by Genesis.

After BCBSM's denial, plaintiffs filed this lawsuit[2] in the Ingham Circuit Court, arguing that the court had jurisdiction under 1980 PA 350, the Nonprofit Health Care Corporation Reform Act (NHCCRA), MCL 550.1101 *et seq.*, to compel the commissioner to regulate BCBSM. Plaintiffs requested that the circuit court direct the commissioner to issue a cease and desist order enjoining BCBSM from discriminating by application of its EON test against a freestanding surgical facility not owned by a hospital. According to plaintiffs, BCBSM discriminated against freestanding surgical facilities not owned by hospitals and the commissioner had failed to regulate BCBSM's conduct. Plaintiffs sought equitable relief and a declaratory judgment compelling the commissioner to issue a cease and desist order enjoining BCBSM from ultra vires and illegal conduct.

Defendant moved for summary disposition, arguing, inter alia, that the Ingham Circuit Court lacked jurisdiction because an actual controversy did not exist and plaintiffs had failed to exhaust their administrative remedies. Defendant stated that BCBSM's Ambulatory Facilities Provider Class Plan was scheduled for

---

[2] Plaintiffs initially filed an action against BCBSM raising the same issues raised in the present matter. After the trial court dismissed plaintiffs' claims, this Court affirmed the decision of the trial court, holding that plaintiffs did not have standing to bring a cause of action directly against BCBSM. This Court stated that although plaintiffs could not sue BCBSM directly, the Nonprofit Health Care Corporation Reform Act, MCL 550.1101 *et seq.*, provided that plaintiffs either could commence an action in the Ingham Circuit Court to compel the commissioner to enforce the act or could petition the Attorney General to commence an action to enjoin violations of the act. *Genesis Center v BCBSM*, 243 Mich App 692; 625 NW2d 37 (2000).

review by defendant beginning in July 1999 to determine if BCBSM had substantially achieved the goals of the corporation and the provider class plan. Defendant stated that BCBSM's use of the EON criteria would be investigated as part of the provider class plan review to determine if BCBSM had entered into sufficient participation agreements to ensure that its subscribers had reasonable access to health care; therefore, plaintiffs' action to compel the commissioner to take action was unnecessary. Defendant asserted that a declaratory judgment was not needed because if plaintiffs were not satisfied with his decision after the plan review, they could appeal the decision to an independent hearing officer and then to the court system.

In response, plaintiffs filed a cross-motion for summary disposition, claiming that no genuine issue of material fact existed that the commissioner must perform his duty and stop BCBSM from violating BCBSM's own enabling statute, i.e., the NHCCRA. Plaintiffs claimed that the provider class plan review conducted by the commissioner would not address such issues as whether BCBSM had engaged in ultra vires activity to deny participating provider status to surgery facilities not owned by a hospital. According to plaintiffs, BCBSM usurped the state's police power to grant medical licenses by refusing to allow plaintiffs to participate and that BCBSM's use of the EON criteria violated the act's purpose of providing greater access to health care services. Plaintiffs claimed that the circuit court had jurisdiction under MCL 550.1619(3) and requested that the circuit court declare BCBSM's conduct to be illegal and stop such conduct.

During the summary disposition hearing, the trial court stated that the main issue was whether BCBSM could deny either participating provider status or reimbursement to a freestanding surgical facility on the basis of its own determination that the facility was not needed for its subscribers even though the state had issued a certificate of need that implied that the facility was needed for the population at large. The trial court concluded that this issue had already been decided against plaintiffs in *Psychological Services of Bloomfield, Inc v BCBSM*, 144 Mich App 182; 375 NW2d 382 (1985), where this Court held that a state-issued certificate of need was not the equivalent of a finding that BCBSM subscribers needed the facility. The circuit court stated further that plaintiffs had failed to exhaust their administrative remedies and that the proper way for plaintiffs to raise their issues was by appeal following the provider class plan review. The court adopted another Ingham Circuit Court judge's opinion in *Vision Institute of Michigan Surgery Center, PC v BCBSM*, unpublished opinion of the Ingham Circuit Court, issued January 12, 1999 (Docket No. 98-89017-CZ), where the trial court concluded, in a case involving issues similar to those in the instant case, that (1) no issuance of a declaratory judgment was necessary because the NHCCRA provided the manner in which the provider class plan was to be reviewed and provided the opportunity for the plaintiffs to raise any concerns regarding the plan during the review process, (2) pursuant to MCL 550.1105(4), BCBSM had the authority to set a need requirement (i.e., evidence of necessity) in its provider class plans, (3) the commissioner was not obligated to issue a cease and desist order, and (4) the

plaintiffs were not entitled to injunctive relief. The trial court granted defendant's motion for summary disposition and later denied plaintiffs' motion for reconsideration.

Following the trial court's rulings and while this appeal was pending, defendant conducted a review of BCBSM's provider class plan. In a lengthy and detailed report, defendant found that while BCBSM has the right pursuant to the NHCCRA to set standards for provider participation, the EON criteria set by BCBSM were unreasonable. Defendant found that BCBSM had manipulated the EON formula to exclude ambulatory surgery facilities that were not owned by a hospital from being granted participating provider status. Defendant concluded that BCBSM had discriminated against ambulatory surgery facilities not owned by a hospital in violation of MCL 550.1502(8), which explicitly states that BCBSM could not deny participation to a freestanding surgical outpatient facility "on the basis of ownership . . . ."[3] According to defendant, BCBSM did not meet the access to care and the quality of care goals set forth in the NHCCRA. Pursuant to MCL 550.1511(1), defendant ordered BCBSM to submit a new provider class plan that substantially achieved the unmet goals and that would substantially overcome the deficiencies enumerated in the report, e.g., the

---

[3] MCL 550.1502(8) provides:

A health care corporation shall not deny participation to a free-standing surgical outpatient facility on the basis of ownership if the facility meets the reasonable standards set by the health care corporation for similar facilities . . . .

denial of participation to facilities not owned by hospitals.[4]

## II. ANALYSIS

Plaintiffs assert that the circuit court's jurisdiction over this matter was proper pursuant to MCL 550.1619(3),[5] and that this Court should reverse the circuit court's order and remand for a determination pertaining to the merits of plaintiffs' claims regarding BCBSM's alleged illegal and ultra vires activity. We decline to reverse the circuit court's order. We conclude that the circuit court properly dismissed plaintiffs' claims seeking declaratory relief because plaintiffs failed to exhaust their administrative remedies and no case of actual controversy existed. Further, we deny plaintiffs' request for a cease and desist order.

The crux of plaintiffs' argument in this case involves BCBSM's provider class plan and whether defendant's review of the plan can fully address plaintiffs' claims, including whether BCBSM applied its EON criteria in a discriminatory manner to deny Genesis

---

[4] According to the information provided during oral argument in this case, BCBSM had until December 29, 2000, to file a new plan. MCL 550.1511(1), 550.1512. Defendant had ninety days from that date to review the new plan and either approve or disapprove it. MCL 550.1513. If approved by defendant, then plaintiffs or any other ambulatory surgery facility could appeal to an independent hearing officer and thereafter to the Court of Appeals, upon leave granted, if there is dissatisfaction with defendant's approval. MCL 550.1514, 550.1515, 550.1518.

[5] MCL 550.1619(3) provides:

A political subdivision of this state, an agency of this state, or any person may bring an action in the circuit court for Ingham county for declaratory and equitable relief against the commissioner or to compel the commissioner to enforce this act or rules promulgated under this act.

participating provider status on the basis of owner-ship in violation of MCL 550.1502(8). Plaintiffs have requested that the circuit court make the determination regarding BCBSM's actions. Plaintiffs concede that they are not arguing that BCBSM cannot utilize its own "reasonable standards" pursuant to the NHCCRA to determine participation status, nor are they arguing that Genesis must be granted participating provider status simply because it is licensed.

This Court reviews de novo a trial court's grant of summary disposition. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). Although the trial court did not specifically state under which grounds it was granting summary disposition, it appears that summary disposition was granted pursuant to sub-rules MCR 2.116(C)(4) (lack of subject-matter juris-diction) and (C)(10) (no genuine issue of material fact). This Court reviews a trial court's grant of sum-mary disposition pursuant to MCR 2.116(C)(4) "to determine if the moving party was entitled to judg-ment as a matter of law, or if affidavits or other proofs demonstrate there is an issue of material fact." *Harris v Vernier*, 242 Mich App 306, 309; 617 NW2d 764 (2000). With respect to MCR 2.116(C)(10), sum-mary disposition may be granted if the evidence shows " 'that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law.' " *Smith, supra* at 454, quoting *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). Further, whether the trial court has subject-matter jurisdiction over a claim is a question of law that this Court reviews de novo. *Harris, supra.*

BCBSM is a unique entity, acting as a quasi-public, nonprofit, tax-exempt institution, incorporated pursuant to special enabling legislation. *Westland Convalescent Center v BCBSM*, 414 Mich 247, 264 (FITZGERALD, J.); 324 NW2d 851 (1982); *BCBSM v Ins Comm'r*, 403 Mich 399, 415-416; 270 NW2d 845 (1978). BCBSM operates subject to the NHCCRA. The purpose of the NHCCRA is specifically stated as the promotion of the "appropriate distribution of health care services for all residents of this state . . . and to assure for nongroup and group subscribers, reasonable access to, and reasonable cost and quality of, health care services . . . ." MCL 550.1102(1). The NHCCRA further states that "[i]t is the intention of the legislature that this act shall be construed to provide for the regulation and supervision of nonprofit health care corporations by the commissioner of insurance . . . ." MCL 550.1102(2); see, also, *In re 1987-88 Medical Doctor Provider Class Plan*, 203 Mich App 707, 728; 514 NW2d 471 (1994).

Under MCL 550.1509(1), the commissioner may determine at specific times whether BCBSM has substantially achieved both the goals provided in § 504 of the NHCCRA, MCL 550.1504, and the objectives contained within the provider class plan. *In re Provider Class Plan, supra* at 713. The commissioner has six months to make a determination. MCL 550.1509(2); *In re Provider Class Plan, supra.* The goals outlined in § 504 that must be achieved are "reasonable access to, and reasonable cost and quality of, health care services" for BCBSM subscribers. MCL 550.1504(1). When defendant reviews a provider class plan to determine whether the goals of § 504 are satisfied, defendant must consider the comments of individual providers,

like plaintiffs, or associations representing the appropriate provider class. MCL 550.1509(4)(e); *In re Provider Class Plan, supra.* If defendant finds that the provider plan is inadequate, MCL 550.1510(1)(c), as in the present case, the health corporation must transmit a remedial plan within six months[6] that "substantially achieves the goals, achieves the objectives, and substantially overcomes the deficiencies enumerated in the findings made by the commissioner . . . ." MCL 550.1511(1); *In re Provider Class Plan, supra* at 713-714.

After reviewing the NHCCRA and plaintiffs' specific claim that the circuit court had jurisdiction to declare BCBSM's conduct to be illegal and to enjoin such conduct, we conclude that the court lacked jurisdiction over the matter because plaintiffs failed to exhaust their administrative remedies.[7] As previously stated, the Legislature explicitly directed the commissioner to regulate and supervise nonprofit health care corporations like BCBSM. MCL 550.1102(2); *In re Provider Class Plan, supra* at 728. Although plaintiffs are correct in stating that subsection 619(3) allows them to bring an action in the Ingham Circuit Court, we do not believe that subsection 619(3) allows the circuit court to conduct the same type of review that the

---

[6] A one-time extension of ninety days may be granted by the commissioner pursuant to MCL 550.1512.

[7] We note that plaintiffs' request for a remand to the circuit court for a determination pertaining to the merits of the plaintiffs' claims regarding BCBSM's alleged misconduct is moot at this point because defendant has already made a determination regarding BCBSM's conduct. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). However, because it is " 'of public significance and is likely to recur,' " we decline to dismiss the issue. *In re Lafayette Towers*, 200 Mich App 269, 271; 503 NW2d 740 (1993), quoting *In re Ford*, 187 Mich App 452, 454; 468 NW2d 260 (1991).

commissioner has authority to conduct under the NHCCRA. The circuit court would be exceeding its authority if it were to conduct a comprehensive review of the provider class plan as plaintiffs requested in this case. See, e.g., *In re Provider Class Plan, supra* at 730. Instead, we read subsection 619(3) as presenting an appropriate avenue by which the circuit court can compel the commissioner to enforce the NHCCRA, e.g., to conduct a provider class plan review to determine if BCBSM is discriminating against surgical facilities not owned by hospitals.

Requiring the exhaustion of administrative remedies in the present case fulfills several purposes of the doctrine: (1) an untimely resort to the courts may result in delay and disruption of an administrative scheme; (2) any type of appellate review is best made after the agency has developed a full record; (3) resolution of the issues may require the technical competence of the agency; and (4) the administrative agency's settlement of the dispute may render a judicial resolution unnecessary. *Citizens for Common Sense in Gov't v Attorney General,* 243 Mich App 43, 53; 620 NW2d 546 (2000), quoting *Int'l Business Machines Corp v Dep't of Treasury,* 75 Mich App 604, 610; 255 NW2d 702 (1977). For example, as demonstrated in the commissioner's determination report regarding BCBSM's provider class plan, the expertise and technical competence of the commissioner's office was required to resolve the issues in this matter. The report was over thirty-eight pages in length with attachments and presented an overview of the provider class plan, a summary of testimony regarding the issues from numerous individuals, including providers, a comparison of all statewide licensed

ambulatory surgical providers against those that had been granted participating provider status by BCBSM, and various findings and conclusions by the commissioner. Any action by the circuit court in this matter may have delayed the commissioner's review process and interfered with the commissioner's duty under the NHCCRA to prepare a determination of the provider plan that ultimately serves as a record for subsequent appeals. Further, contrary to plaintiffs' assertion, the commissioner's report did address the substantive issues raised by plaintiffs concerning BCBSM's alleged misconduct, including BCBSM's denial of participating provider status to ambulatory surgical facilities not owned by hospitals.[8]

We also conclude that no actual controversy existed in this case.[9] MCR 2.605(A)(1), pursuant to which plaintiffs filed their request for declaratory relief, authorizes the circuit court to provide such relief "[i]n a case of actual controversy . . . ." An actual controversy exists when "a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve the plaintiff's legal rights." *Citizens for Common Sense, supra* at 55. If no actual controversy exists, the circuit court lacks subject-matter jurisdiction to enter a declaratory judgment. *Id.* at 56.

---

[8] In addition to the commissioner's finding that BCBSM had manipulated its EON criteria to discriminate against ambulatory surgical facilities not owned by hospitals, the commissioner also found, with regard to Genesis specifically, that BCBSM should have granted Genesis participating provider status for two operating rooms when it applied for and was denied participation in 1997.

[9] Although plaintiffs are correct that MCL 550.1619(3) allows a party to bring an action asking the commissioner to enforce the law, the party must still meet the requirement for declaratory relief under MCR 2.605, which requires that an actual controversy exist.

Plaintiffs claimed that BCBSM was discriminating against ambulatory surgery facilities not owned by hospitals and that defendant's provider plan review would not address this discrimination. However, as stated previously, defendant specifically considered plaintiffs' comments regarding BCBSM's discrimination and found that BCBSM, indeed, was manipulating its EON criteria to discriminate against ambulatory surgery facilities, such as Genesis, that were not owned by hospitals. Plaintiffs failed to prove an actual controversy because the provider plan review process set out in MCL 550.1509 through 550.1518 provides plaintiffs with the ability to preserve their legal rights. A further declaration by the circuit court was unnecessary to protect plaintiffs' rights.[10] Thus, the circuit

---

[10] In analyzing this issue, we found no published cases in Michigan addressing the identical issues raised here that involve the circuit court's jurisdiction under subsection 619(3). However, in a recent, unpublished decision, a panel of this Court did address this issue with respect to a different complaint filed by another ambulatory surgery facility not owned by a hospital against the commissioner. In *Blakewoods Surgery Center, LLC v Michigan Ins Comm'r*, unpublished opinion per curiam of the Court of Appeals, issued January 19, 2001 (Docket No. 221494), The plaintiffs, a freestanding ambulatory surgical facility and its physician-owners, filed a lawsuit, like the instant case, under MCL 550.1619(3) and MCR 2.605, requesting that the circuit court issue a declaratory judgment that the commissioner had the duty and authority to issue a cease and desist order to enjoin BCBSM's alleged ultra vires and illegal conduct and that the circuit court issue declarations that various of BCBSM's practices related to its freestanding ambulatory surgical facility provider class plan were discriminatory and violative of numerous provisions of the NHCCRA.

The circuit court dismissed the plaintiffs' complaint, noting that the commissioner's provider plan review process provided by § 509 of the NHC-CRA was scheduled to begin in July 1999, and finding that the review process would adequately address the plaintiffs' underlying requested relief. This Court affirmed the decision of the trial court according to the following reasoning:

Defendant, pursuant to § 509(1), initiated review of the provider class plan at issue on July 6, 1999. It was with awareness of this imminent consideration that the trial court granted defendant's

court properly dismissed plaintiffs' claim for declaratory relief.

To the extent that plaintiffs requested a declaration that defendant had a duty to issue a cease and desist order to enjoin BCBSM's alleged illegal and ultra vires conduct, that request essentially sought the issuance of a writ of mandamus. Mandamus is an extraordinary remedy and an inappropriate tool to control a public official's or an administrative body's exercise of discretion. *W A Foote Memorial Hosp v Dep't of Public Health,* 210 Mich App 516, 525-526; 534 NW2d 206 (1995). Such a writ is properly granted only when, for all practical purposes, there is no other remedy that might achieve the same result. *McDonald's Corp v Canton Twp,* 177 Mich App 153, 156; 441 NW2d 37 (1989). Because the commissioner had no clear legal duty under the NHCCRA to issue a cease and desist order and because the statutory review proceedings present an alternate and adequate remedy, resort to mandamus would have been inappropriate. The trial court appropriately granted summary disposition.

We affirm.

---

motion for summary disposition one month earlier. We agree with the trial court's implied finding that no actual controversy existed, and we hold that contrary to plaintiffs' arguments, no declaratory judgment is necessary to guide the litigants' future conduct in order to preserve their legal rights. Assuming that plaintiffs' underlying concerns regarding BCBSM's conduct under the act are well-founded, we are not convinced that the statutory review process, and its available avenues of appeal, will fail to provide plaintiffs with the ultimate relief herein requested. [Citation omitted.]

Although *Blakewoods* is an unpublished opinion and, therefore, not precedentially binding, MCR 7.215(C), we agree with its holding and conclude similarly that where the commissioner is performing the statutory duty to review BCBSM's provider class plan and to consider plaintiffs' concerns with respect to the plan, no order by the trial court is necessary to guide the parties' conduct or preserve plaintiffs' rights.