CASCO TOWNSHIP v SECRETARY OF STATE

Docket No. 244101. Submitted January 7, 2004, at Lansing. Decided March 25, 2004, at 9:00 A.M.

Casco Township, Columbus Township, and others, brought an action in the Ingham Circuit Court seeking, in part, a writ of mandamus requiring the Secretary of State to authorize a referendum, pursuant to a petition by Patricia Iseler, James P. Holk, and others, on the detachment of land from the city of Richmond and the annexation of part of the land to Casco Township and the remainder to Columbus Township. The votes from both townships would be combined to determine if a majority approved the measure. The city is partly in St. Clair County and partly in Macomb County. The court, Peter D. Houk, J., denied the writ after the Secretary of State, pursuant to an opinion of the Attorney General, stated that the Home Rule City Act, MCL 117.1 *et seq.*, did not allow a single election for a detachment of land from one city into two townships. The townships, Iseler, and Holk appealed.

The Court of Appeals *held*:

1. The relevant statute, MCL 117.11, is ambiguous regarding whether a single election is permissible under the circumstances presented in this matter.

2. It would be unfair that citizens of one township would be allowed to vote on issues that affect another township. The combined voting strength of the townships could overwhelm the voting strength of the city. Such an outcome conflicts with the mandate in Const 1963, art 1, § 1 that all political power is inherent in the people and that government is instituted for the equal benefit, security, and protection of the people. The Secretary of State properly refused to certify the petition and schedule an election. The act does not permit the type of election requested in the petition.

3. The court did not abuse its discretion in denying the writ of mandamus. The court properly denied declaratory relief.

Affirmed.

ZAHRA, P.J., dissenting stated that the unambiguous language of the Home Rule City Act permits a single election to determine the

detachment of property from one city and the attachment of the property to two townships. The Secretary of State was duty-bound to certify the petition and conduct the election.

Boundaries — Home Rule Cities — Detachment Elections.

The Home Rule City Act does not authorize a single election seeking the detachment of land from a city and the attachment of some of that land to one township and the rest of that land to another township wherein the votes from both townships would be totaled and an overall majority of such voters would decide the issue (MCL 117.1 *et seq.*).

*Foster, Swift, Collins & Smith, P.C.* (by *William K. Fahey* and *Ronald D. Richards Jr.*) and *James V. Dubay*, for Casco Township, Columbus Township, Patricia Iseler, and James P. Holk.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Katherine C. Galvin*, Assistant Attorney General, for the Secretary of State and the Director of the Bureau of Elections.

*Kerr Russell and Weber, PLC* (by *Robert J. Pineau*), for Walter and Patricia Winkle.

*Rex A. Burgess, PLC* (by *Rex A. Burgess*), for the city of Richmond.

Amici Curiae:

*Eric D. Williams* for the Michigan Municipal League.

*Bauckham, Sparks, Rolfe, Lohrstorfer & Thall, P.C.* (by *James H. Bauckham*), for Michigan Townships Association.

Before: ZAHRA, P.J., and CAVANAGH and COOPER, JJ.

COOPER, J. Plaintiffs Township of Casco, Township of Columbus, Patricia Iseler, and James Holk, appeal as of right the trial court's September 10, 2002, order deny-

ing their request for a writ of mandamus compelling defendant Secretary of State to certify their detachment petition and set an election, or, alternatively, to provide declaratory relief interpreting their right to an election on the detachment petition. We affirm.

This case raises a novel question of statutory interpretation concerning whether a single "detachment election"—i.e., a vote on removing land from a city to make it part of a township—can be held to move land from a city to more than one township. The Home Rule City Act (HRCA), MCL 117.1 *et seq.*, does not specify whether a single election for a detachment of land from one city into two townships is permissible. But logic dictates that a township or city should not have voting privileges over matters that involve a different township or city. Accordingly, we find that the HRCA does not unambiguously endorse a single election for multiple detachments of land involving more than two governmental entities.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The HRCA provides for elections on changing boundaries of cities, villages and townships. At least twenty-five people in each local government unit that would gain or lose territory in the change must sign a petition calling for a referendum.[1] If more than one county is affected, the petition goes to the Secretary of State, who decides if the legal requirements for a referendum have been met.[2] The referendum includes voters from each affected local unit.[3]

---

[1] MCL 117.11.

[2] MCL 117.11.

[3] MCL 117.11.

The instant dispute, whose history is recounted in this Court's opinion in *Casco Twp v State Boundary Comm*,[4] began when defendants Walter and Patricia Winkle petitioned the State Boundary Commission to annex land they owned just outside the boundary of the City of Richmond into the City. Some of the land was in Casco Township and some in Columbus Township.[5] Because fewer than one hundred persons lived on the land, no referendum on annexation was authorized, and the Boundary Commission approved the annexation without a popular vote.[6]

The Winkles wanted the annexation because they hoped to develop the land commercially, which could not be done without the sewer and water lines that Richmond offered.[7] The townships challenged the annexation in court after first entering an agreement to transfer the land to another township instead of to Richmond.[8] The State Boundary Commission, the trial court, and this Court all found that the transfer agreement was a "sham," and allowed the annexation by Richmond to go forward.[9]

The individual plaintiffs, among others, then signed a petition, pursuant to MCL 117.9, to detach the land from Richmond and return it to Columbus and Casco Townships. The petition called for a single election in which votes from Richmond and the two townships would be totaled, and an overall majority would decide the question. Although Casco and Columbus Townships

---

[4] *Casco Twp v State Boundary Comm*, 243 Mich App 392, 395-396; 622 NW2d 332 (2000).

[5] *Id.* at 395.

[6] *Id.* at 396; MCL 117.9(4).

[7] *Casco Twp, supra* at 396.

[8] *Id.*

[9] *Id.* at 400-403.

are in St. Clair County, Richmond is partly in St. Clair and partly in Macomb County. Because Richmond straddles the county line, the detachment election petition was sent, pursuant to MCL 117.11, to the Secretary of State to determine whether such a vote was authorized by statute.

The Secretary of State, viewing the question as novel, requested legal advice from the Attorney General. In an informal opinion, the Attorney General advised that despite the absence of controlling case law, the petition's request for a single vote on multiple detachments was not authorized by statute. The Secretary of State agreed with this assessment and informed plaintiffs that the vote could not be scheduled.

Plaintiffs then sued in Ingham Circuit Court for a writ of mandamus requiring the Secretary of State to authorize the referendum. The trial court denied the writ, ruling that the Secretary of State is only required to certify those petitions that are clearly appropriate. According to the trial court, the Secretary of State's determination that the law did not authorize the type of vote the petition called for was reasonable.

II. HOME RULE CITY ACT

Plaintiffs initially contend that the HRCA unambiguously authorizes them to file a single petition and obtain a single election on the detachment question facing the city and the two townships. We disagree. Issues of statutory interpretation are questions of law subject to review de novo on appeal.[10]

The primary goal in statutory construction is to ascertain and give effect to the intent of the Legisla-

---

[10] *Eggleston v Bio-Medical Applications of Detroit, Inc,* 468 Mich 29, 32; 658 NW2d 139 (2003).

ture.[11] When a statute's language is clear and unambiguous, we must assume that the Legislature intended its plain meaning and enforce the statute as written.[12] It is only when the statutory language is ambiguous that this Court is permitted to look beyond the statute to determine the Legislature's intent.[13] Statutory language is considered ambiguous when reasonable minds can differ with respect to its meaning.[14] When construing an ambiguous statute, "[t]he court must consider the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose, but should also always use common sense."[15] In this regard, courts should seek to avoid a construction that would produce absurd results, injustice, or prejudice to the public interest.[16]

The relevant statutory text from MCL 117.11 provides as follows:

When the territory to be affected by any proposed incorporation, consolidation or change is situated in more than 1 county the petition hereinbefore provided shall be addressed and presented to the secretary of state, with 1 or more affidavits attached thereto sworn to by 1 or more of the signers of said petition, showing that the statements contained in said petition are true, that each signature affixed thereto is the genuine signature of a qualified

---

[11] *Weakland v Toledo Engineering Co, Inc*, 467 Mich 344, 347; 656 NW2d 175 (2003).

[12] *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

[13] *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000).

[14] *In re MCI*, 460 Mich 396, 411; 596 NW2d 164 (1999).

[15] *Morris & Doherty, PC v Lockwood*, 259 Mich App 38, 44; 672 NW2d 884 (2003).

[16] *Id.*

elector residing in a city, village or township to be affected
by the carrying out of the purposes of the petition and that
not less than 25 of such signers reside in each city, village
or township to be affected thereby. The secretary of state
shall examine such petition and the affidavit or affidavits
annexed, and if he shall find that the same conforms to the
provisions of this act he shall so certify, and transmit a
certified copy of said petition and the accompanying affi-
davit or affidavits to the clerk of each city, village or
township to be affected by the carrying out of the purposes
of such petition, together with his certificate as above
provided, and a notice directing that at the next general
election occurring not less than 40 days thereafter the
question of making the incorporation, consolidation or
change of boundaries petitioned for shall be submitted to
the electors of *the district* to be affected . . . . The several
city, village and township clerks who shall receive from the
secretary of state the copies and certificates above provided
for shall give notice of the election to be held . . . .[17]

Contrary to plaintiffs' argument, we do not find that
this language explicitly states that a single election is
sufficient to detach territory from a city into more than
one township. Nor, however, do we find that that the
statute definitively states the opposite. The Legisla-
ture's mere use of the phrase "the district" fails to
clarify where a vote can be taken, especially when the
very controversy is what the Legislature intended "the
district" to entail. Similarly, the use of language like
"each city, village or township" does not clearly imply
that more than one township could be involved in such
a vote. It seems equally as likely that the word "each" is
used because at least two governmental entities are
involved in every detachment vote.

Because reasonable minds can differ with respect to
whether a single election is permissible under the
instant circumstances, we must consider the object of

---

[17] Emphasis added.

the statute and apply a reasonable construction that is logical and best accomplishes the HRCA's purpose.[18] The fact that *Williamston v Wheatfield Twp*,[19] stated "[t]here is no ambiguity in the detachment procedure provided for by the [HRCA]" is not controlling in this case. The plaintiffs in *Williamston* relied upon a previously omitted detachment provision that required an affirmative vote for a boundary change from each government unit affected.[20] But the Court in *Williamston* refused to consider this omitted language because there was no ambiguous language to clarify.[21] Thus, the holding in *Williamston* does not mean that every clause in the HRCA is unambiguous. In any event, we note that *Williamston* was decided before November 1, 1990, and is therefore not binding authority on this Court.[22]

After reviewing the well-briefed arguments and cases provided by both parties, we find no case law that directly addresses the current situation. Rather, the cases cited by the parties, while helpful in terms of analysis, concern different factual scenarios and are largely irrelevant given the HRCA's subsequent amendments.[23] These cases, however, do represent a continuing concern that local government units determine their own fate. For instance, in *Cook*,[24] our Supreme Court specifically agreed with the plaintiff's position that " 'the district to be annexed' means that portion of

---

[18] See *Morris & Doherty, supra* at 44.

[19] *Williamston v Wheatfield Twp*, 142 Mich App 714, 718; 370 NW2d 325 (1985).

[20] *Id.* at 718-719.

[21] *Id.*

[22] MCR 7.215(J)(1).

[23] See, e.g., *Renne v Oxford Twp*, 380 Mich 39; 155 NW2d 852 (1968); *Walsh v Secretary of State*, 355 Mich 570; 95 NW2d 511 (1959); *Cook v Kent Co Bd of Canvassers*, 190 Mich 149; 155 NW 1033 (1916).

[24] *Cook, supra* at 154.

each township to be annexed, and that the statute requirement of a majority vote in the 'district to be annexed' means that that portion of each township to be annexed must vote affirmatively before annexation can follow." According to the Court in *Cook*, this position was more "consonant with justice and with the principles of local self-government which have been so frequently enunciated by this court."[25]

There are two separate questions presented on plaintiffs' petition in this case; i.e. whether to detach land from Richmond into Casco Township and whether to detach land from Richmond into Columbus Township. In simple terms, it is clearly unfair that citizens of one township be allowed to vote on issues that affect another township.[26] Indeed, the townships' combined voting strength could be used to overwhelm the city's voting strength. Such an outcome conflicts with the Michigan constitutional mandate that "[a]ll political power is inherent in the people. Government is instituted for their *equal* benefit, security and protection."[27] We therefore find that the HRCA does not permit the type of election requested in plaintiffs' petition.

We therefore reject plaintiffs' argument that the Secretary of State improperly refused to certify the petition and schedule an election. The Secretary of State is only permitted to certify or schedule authorized petitions and elections.[28]

## II. WRIT OF MANDAMUS

Plaintiffs further assert that the trial court abused its discretion when it denied their request for a writ of

---

[25] *Id.*

[26] See *Morris & Doherty, supra* at 44.

[27] Const 1963, art 1, § 1.

[28] MCL 117.11.

mandamus. We disagree. A trial court's decision regarding a writ of mandamus is reviewed for an abuse of discretion.[29]

To obtain a writ of mandamus, a plaintiff must have a clear legal right to the performance of the duty, the defendant must have a clear legal duty to perform it, the act must be ministerial, and the plaintiff must be without other adequate legal or equitable remedy.[30] Here, the Secretary of State did not have a clear legal duty to authorize plaintiffs' petition or schedule an election. Accordingly, the trial court properly denied plaintiffs' request for a writ of mandamus in this regard.

### III. DECLARATORY RELIEF

Plaintiffs ultimately argue that the trial court erroneously failed to address their request for declaratory relief. We disagree. Entitlement to declaratory relief is a question of law that is reviewed de novo by this Court.[31]

Although the trial court may not have used formal language specifically denying declaratory relief, it found that plaintiffs' interpretation of the statute was incorrect and dismissed the case. Implicit in both these actions was a finding that plaintiffs are not entitled to declaratory relief.

Affirmed.

CAVANAGH, J., concurred.

---

[29] *In re MCI, supra* at 443.

[30] *Id.; Lickfeldt v Dep't of Corrections*, 247 Mich App 299, 302; 636 NW2d 272 (2001).

[31] *Genesis Ctr, PLC v Comm'r of Financial & Ins Services*, 246 Mich App 531, 540; 633 NW2d 834 (2001).

ZAHRA, P.J. (*dissenting.*) I respectfully dissent. The Home Rule City Act (HRCA), MCL 117.1 *et seq.*, is not ambiguous as it relates to attachment and detachment elections. See *Williamston v Wheatfield Twp*, 142 Mich App 714, 718-719; 370 NW2d 325 (1985) ("There is no ambiguity in the detachment procedure provided for by the home rule cities act. Read literally, its provisions are clear. . . . [B]ecause the language of the provisions [MCL 117.9 and MCL 117.9b] now in effect is clear and unambiguous, we are precluded from construction or interpretation to vary that plain meaning."). The HRCA permits a single election to determine the detachment of property from one city to two townships. Accordingly, the Secretary of State was duty-bound to certify the petition and conduct the election. I would reverse.

I respectfully disagree with the majority's conclusion that the HRCA is ambiguous merely because the statutory language does not expressly sanction or prohibit a single election to detach territory from one city and attach it to more than one township. To determine whether a statute is ambiguous, we must examine the relevant statutory provisions in context and determine whether the language of the statute is susceptible to more than one interpretation. If statutory provisions are in conflict, and therefore susceptible to more than one meaning, an ambiguity exists. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467, 480; 663 NW2d 447 (2003) (explaining that "if two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous"); *American Alternative Ins Co, Inc v York*, 469 Mich 948; 670 NW2d 567 (2003) (MARKMAN, J., concurring) (noting that the rules applicable to determining whether a contract is ambiguous may apply with equal force to matters of statutory construction). However, where, as here, a

reasonable construction of the statute considered in context leads to but one conclusion, an ambiguity may not be declared.

MCL 117.6 provides for an election originating by a single petition to detach territory from, or add territory to, multiple cities, or for the consolidation of multiple cities, villages, or townships into one city:

> Cities may be incorporated or territory detached therefrom or added thereto, or consolidation made of 2 or more cities or villages into 1 city, or of a city and 1 or more villages into 1 city, or of 1 or more cities or villages together with additional territory not included within any incorporated city or village into 1 city, by proceedings originating by petition therefor signed by qualified electors who are freeholders residing within the cities, villages, or townships to be affected thereby . . . .

Admittedly, the present case involves a detachment from one city, rather than multiple cities. Additionally, the present petition was not initiated under MCL 117.6, but was initiated under MCL 117.11, which requires the involvement of the Secretary of State.[1] Nonetheless, MCL 117.6 shows that the Legislature intended to allow more than two cities, villages, or townships to be involved in a single detachment election. "It is a well-established rule of statutory construction that provisions of a statute must be construed in light of the other provisions of the statute to carry out the apparent purpose of the Legislature." *Farrington v Total Petroleum, Inc*, 442 Mich 201, 209; 501 NW2d 76 (1993). Significantly, no language in MCL 117.11 conflicts or is otherwise inconsistent with the language of MCL 117.6. Rather, the relevant portions of these statutory provisions are consistent.

---

[1] MCL 117.11 brings the Secretary of State into the petition certification process where the terrtory to be affected by the proposed boundary change is situated in more than one county.

Under MCL 117.11, once the Secretary of State certifies a petition, the Secretary of State is required to send a copy of the petition to the clerk of "each city, village or township to be affected," and "notice directing that at the next general election occurring not less than 40 days thereafter the question of making the incorporation, consolidation or change of boundaries petitioned for shall be submitted to the electors of *the district to be affected . . . .*" (Emphasis added.) MCL 117.9(1) explains the meaning of the phrase "the district to be affected" under the HRCA: "[t]he district to be affected by every such proposed incorporation, consolidation, or change of boundaries shall be deemed to include the whole of *each* city, village, or township *from which territory is to be taken or to which territory is to be annexed.*" (Emphasis added.) This broad definition indicates that a single election district is established to determine a change of boundary lines affecting multiple cities, villages, or townships. The Legislature uses general language in describing "the district to be affected," allowing for the phrase to encompass more than just two cities, villages, or townships. Accordingly, because the Legislature refers to a single petition as it relates to "the district to be affected" in MCL 117.11, and the district to be affected is broadly defined to include multiple cities, villages, and townships, I conclude that the unambiguous language of the HRCA allows for a single election to be held to detach territory from a city to multiple townships. I would reverse.