# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

CLAM LAKE TOWNSHIP v DEPARTMENT OF LICENSING
AND REGULATORY AFFAIRS

TERIDEE LLC v HARING CHARTER TOWNSHIP

Docket Nos. 151800 and 153008. Argued December 8, 2016 (Calendar No. 3). Decided July 3, 2017.

In Docket No. 151800, Clam Lake Township and Haring Charter Township (the Townships) appealed in the Wexford Circuit Court the determination of the State Boundary Commission (the Commission) that an agreement entered into under the Intergovernmental Conditional Transfer of Property by Contract Act, 1984 PA 425, MCL 124.21 *et seq.* (Act 425 agreement) between the Townships was invalid. The Townships entered into the agreement on May 8, 2013, and filed it with the Wexford County Clerk and the Secretary of State on June 10, 2013. The Act 425 agreement sought to transfer to Haring Charter Township an undeveloped parcel of roughly 241 acres of land in Clam Lake Township that was zoned for forest-recreational use. The agreement provided a description of the Townships' desired economic development project, including numerous minimum requirements for rezoning the property. Approximately 141 acres of the land were owned by TeriDee LLC, the John F. Koetje Trust, and the Delia Koetje Trust (collectively, TeriDee), who wished to develop the land for commercial use. To achieve this goal, TeriDee petitioned the Commission to have the land annexed by the city of Cadillac. The Commission found TeriDee's petition legally sufficient and concluded that the Townships' Act 425 agreement was invalid because it was created solely as a means to bar the annexation and not as a means of promoting economic development. The Townships appealed the decision in the circuit court, and the court, William M. Fagerman, J., upheld the Commission's determination, concluding that the Commission had the power to determine the validity of an Act 425 agreement. The Townships sought leave to appeal in the Court of Appeals, which the Court of Appeals denied in an unpublished order, entered May 26, 2015 (Docket No. 325350).

In Docket No. 153008, as the Commission proceedings in Docket No. 151800 were ongoing, TeriDee brought an action in the Wexford Circuit Court against the Townships, seeking a declaratory judgment that the Act 425 agreement was void as against public policy because it contracted away Haring's zoning authority by obligating Haring's zoning board to rezone pursuant to the agreement. The court, William M. Fagerman, J., struck down the agreement, holding that the agreement required Haring to enact specific zoning ordinances, which was an

impermissible delegation of zoning authority. The Townships appealed, and the Court of Appeals affirmed in an unpublished per curiam opinion, issued December 8, 2015 (Docket No. 324022). The Townships sought leave to appeal both cases in the Supreme Court, and the Supreme Court granted the Townships' applications. *Clam Lake Twp v Dep't of Licensing & Regulatory Affairs*, 499 Mich 896, as amended 499 Mich 949 (2016); *TeriDee LLC v Haring Charter Twp*, 499 Mich 896, as amended 499 Mich 950 (2016).

In a unanimous opinion by Justice VIVIANO, the Supreme Court *held*:

Because *Casco Twp v State Boundary Comm*, 243 Mich App 392 (2000), improperly concluded that MCL 124.29 authorized the State Boundary Commission to examine the validity of an Act 425 agreement, *Casco Twp* was overruled. When faced with an Act 425 agreement in annexation proceedings, the Commission may only review whether the agreement is "in effect." An Act 425 agreement is "in effect" if it is entered into and properly filed pursuant to MCL 124.30. The Townships' agreement met those conditions; therefore, the Commission and circuit court erred by invalidating the agreement on other grounds. Act 425 authorizes local units to provide for zoning ordinances in their conditional land transfer agreements. Because the Townships' agreement properly included such provisions, the Court of Appeals' contrary decision was reversed.

1. Under MCL 24.306(1), a decision by the Commission will be set aside if substantial rights of the petitioner have been prejudiced because the decision or order is in violation of the Constitution or a statute, in excess of the statutory authority or jurisdiction of the agency, or affected by other substantial and material error of law. MCL 123.1011a grants the Commission jurisdiction over petitions or resolutions for annexation as provided in MCL 117.9, and MCL 117.9 tasks the Commission with determining the validity of the petition or resolution and endows it with the powers and duties it normally has when reviewing incorporation petitions. While these statutes furnish broad powers concerning annexations, none mentions Act 425 agreements or purports to grant the Commission authority over them.

2. Act 425 provides that two or more local units may conditionally transfer property for a renewable period of not more than 50 years for the purpose of an economic development project. MCL 124.29, the only provision in Act 425 that implicates the Commission, provides that while a contract under this act is in effect, another method of annexation or transfer shall not take place for any portion of an area transferred under the contract. Therefore, all that is required to preempt an annexation petition is for the Act 425 agreement to be "in effect." Because an Act 425 agreement conditionally transfers property, it is "in effect," or operative, when the property has been conditionally transferred. MCL 124.30 provides that a conditional transfer of property occurs when the parties enter into the contract and file the appropriate documents with the county clerk and Secretary of State. At that point, the agreement is "in effect" and preempts any other method of annexation. Act 425 does not condition preemption on a finding that the contract is otherwise valid, and it does not expressly grant to the Commission the power to determine the agreement's validity; instead, the Commission may only make an initial determination of whether the Act 425 agreement is in effect, i.e., whether the contract was entered into by the parties and filed in accordance with MCL 124.30. *Casco Twp*, 243 Mich App 392, which improperly concluded that MCL 124.29 authorized the Commission to examine the validity of an Act 425 agreement, was overruled. In this case, there was no dispute that the

parties had entered into the Act 425 agreement and that it was properly filed at the time the Commission considered the annexation petition. Accordingly, the Townships' agreement was "in effect" and preempted TeriDee's annexation petition.

3. A zoning ordinance is an "ordinance" under MCL 124.26(c). MCL 124.26(c) provides, in relevant part, that a contract under Act 425 may provide for the adoption of ordinances and their enforcement by or with the assistance of the participating local units. MCL 124.26(c) authorizes local units to bargain over the adoption of ordinances, which includes bargaining over their content and substance; i.e., it authorizes contract zoning. The Legislature can empower—and has empowered—municipalities to zone or take other action by agreement even though the agreement will bind those municipalities in the future and constrain their legislative discretion. Accordingly, MCL 124.26(c) authorized the Townships' zoning provisions.

Circuit court judgment in Docket No. 151800 reversed; Court of Appeals judgment in Docket No. 153008 reversed; both cases remanded to the circuit court for further proceedings.

©2017 State of Michigan

# OPINION

Chief Justice:          Justices:
Stephen J. Markman      Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano
                        Richard H. Bernstein
                        Joan L. Larsen
                        Kurtis T. Wilder

FILED July 3, 2017

STATE OF MICHIGAN

SUPREME COURT

CLAM LAKE TOWNSHIP and HARING
CHARTER TOWNSHIP,

        Appellants,

v                                No. 151800

DEPARTMENT OF LICENSING AND
REGULATORY AFFAIRS/STATE
BOUNDARY COMMISSION, TERIDEE
LLC, and CITY OF CADILLAC,

        Appellees.

TERIDEE LLC, JOHN F. KOETJE TRUST,
and DELIA KOETJE TRUST,

        Plaintiffs-Appellees,

v                                No. 153008

HARING CHARTER TOWNSHIP and
CLAM LAKE TOWNSHIP,

        Defendants-Appellants.

BEFORE THE ENTIRE BENCH

VIVIANO, J.

These consolidated cases present two issues. First, in *Clam Lake Twp v Dep't of Licensing & Regulatory Affairs*, we must decide whether the State Boundary Commission (Commission), when reviewing an annexation petition, has authority to determine the validity of a separate agreement entered into under the Intergovernmental Conditional Transfer of Property by Contract Act, 1984 PA 425, MCL 124.21 *et seq*. (Act 425 agreement). We hold that it does not. Instead, the Commission may only make the more limited determination of whether an Act 425 agreement is "in effect," as described by the statute, in which case the agreement preempts the annexation petition.[1] The Commission here failed to properly limit its consideration of the Act 425 agreement between appellants Clam Lake Township and Haring Charter Township (Townships). Rather than asking whether the agreement was "in effect" under the statute, the Commission erred by more broadly reviewing the agreement's validity. The circuit court affirmed this determination, which we now reverse. Because we find the Townships' Act 425 agreement meets the statutory requirements for being "in effect," it preempts the annexation petition.

Second, in *TeriDee LLC v Haring Charter Twp*, we must decide whether an Act 425 agreement can include requirements that a party enact particular zoning ordinances. The plain language of MCL 124.26(c) permits these requirements. Accordingly, the Court of Appeals erred by determining that they were prohibited, and we reverse.

_____
[1] MCL 124.29.

2

# I. FACTS AND PROCEDURAL HISTORY

This case involves an undeveloped parcel of roughly 241 acres of land surrounding the interchange of M-55 and US-131 that was zoned for forest-recreational use. The land sits in Clam Lake Township. Approximately 141 acres are owned by appellees TeriDee LLC, the John F. Koetje Trust, and the Delia Koetje Trust (collectively, TeriDee), who have long wished to develop a mixed-use project on the property, including stores and other commercial entities. This would require connecting the land to sewer and water systems. To that end, in 2008, TeriDee sought approval of an Act 425 agreement[2] between appellant Clam Lake Township and appellee city of Cadillac. The agreement would have transferred the property to Cadillac's jurisdiction to facilitate its commercial development. But a voter referendum rejected the agreement.

Undeterred, TeriDee filed a petition to have the land annexed by Cadillac in 2011. About the same time, Clam Lake Township and Haring Charter Township entered into an Act 425 agreement to transfer the land to Haring. The Commission reviewed both the annexation petition and the Act 425 agreement, which, if effective, would have preempted the petition.[3] In its decision, the Commission rejected the petition and also invalidated the Act 425 agreement, finding, among other things, that the agreement failed to define any economic development project and was instead a ploy to prevent Cadillac's annexation.

---

[2] As discussed in more detail below, Act 425 agreements permit "[t]wo or more local [government] units" to "conditionally transfer property for a period of not more than 50 years for the purpose of an economic development project." MCL 124.22.

[3] MCL 124.29 ("While a contract under this act is in effect, another method of annexation or transfer shall not take place for any portion of an area transferred under the contract.").

3

The current round of disputes began in 2013, when the Townships learned that TeriDee was again planning to file for annexation. Cadillac, the proposed annexor, had public water and sanitary sewer services available near the proposed annexation area. In 2013, neither of the Townships could provide those services. However, that year Haring obtained financing for a new wastewater treatment plant that would enable it to extend water and sewer lines to the property. In light of this development, as well as TeriDee's impending petition, the Townships entered into an Act 425 agreement on May 8, 2013, transferring the land to Haring. The agreement was signed by the Townships and filed with the Wexford County Clerk and the Secretary of State on June 10, 2013.

The agreement, as subsequently amended, describes the Townships' desired economic development project as having two components. First, the project would include "the construction of a mixed-use, commercial/residential development . . . in order to balance the property owners' desire for commercial use with the need to protect the interests of surrounding residential property owners[.]" Second, the project required "the provision of public wastewater services and public water supply services to the Transferred Area, so as to foster the new mixed-use, commercial/residential development . . . ." Further, the agreement provides that the forest-recreation zoning would remain in effect only until Haring could enact various zoning standards, including numerous minimum requirements. The agreement also states that the area's residential portions "shall be zoned in a Haring zoning district that is comparable" to the Township's existing zoning. The remaining property "shall be rezoned" according to the agreement's minimum requirements. The development had to comply with Haring's zoning ordinances, but "[w]here the [agreement's] regulations are more stringent, the more

4

stringent regulations shall apply." Haring was required to make reasonable efforts to adopt these ordinances within one year.

TeriDee subsequently filed its annexation petition. Though the petition mirrors TeriDee's 2011 attempt, the Commission this time found the petition legally sufficient. On review, the Commission concluded that the Act 425 agreement was invalid because it "was created solely as a means to bar the annexation and not as a means of promoting economic development." It cited five factual findings supporting this conclusion: (1) the economic project was "not believed by the Commission to be viable" because the Townships did not consult TeriDee, the landowner; (2) Clam Lake received no tax revenues from the agreement; (3) e-mails between Township officials indicated that the agreement was meant to prevent annexation; (4) the Commission questioned Haring's "ability to effectively and economically provide the defined public services"; and (5) the agreement's timing, shortly before TeriDee's annexation petition, suggested that it was a sham.

The Townships appealed in the circuit court, which upheld the Commission's determination. Relying on *Casco Twp v State Boundary Comm*,[4] the court held that the Commission had the power to determine the validity of the agreement. The court then found that competent, material, and substantial evidence supported the Commission's determination that the agreement was an invalid sham. Next, the court found sufficient evidence supporting the Commission's decision to grant the annexation petition. The Court of Appeals denied the Townships' application for leave to appeal.

---

[4] *Casco Twp v State Boundary Comm*, 243 Mich App 392, 399; 622 NW2d 332 (2000).

As the Commission proceedings were ongoing, TeriDee sued the Townships, seeking a declaratory judgment that the Act 425 agreement was invalid. It argued that the agreement was a contrivance meant to block the annexation. Alternatively, it asserted that the agreement was void as against public policy because it contracted away Haring's zoning authority by obligating Haring's zoning board to rezone pursuant to the agreement. The circuit court declined to consider the first argument, finding that the Commission had primary jurisdiction over that contention. However, the court struck down the agreement based on TeriDee's alternative argument. It found that the agreement required Haring to enact specific zoning ordinances, an impermissible delegation of zoning authority.

The Townships appealed, and the Court of Appeals affirmed.[5] It agreed that "the plain language of the agreement [improperly] contracts away Haring's zoning authority over the undeveloped property by providing how Haring must zone the property."[6] The Court of Appeals also concluded that MCL 124.26(c), part of Act 425, did not permit the parties to engage in this contract zoning.[7]

---

[5] *TeriDee LLC v Charter Twp of Haring*, unpublished per curiam opinion of the Court of Appeals, issued December 8, 2015 (Docket No. 324022), p 1.

[6] *Id*. at 3.

[7] *Id*. at 5-7.

6

The Townships appealed both cases in this Court. We granted leave in each, ordering that the cases be argued together.[8] Among the issues we ordered briefed in *Clam Lake* was

> whether *Casco Twp v State Boundary Comm*, 243 Mich App 392, 399[, 622 NW2d 332, 335] (2000), correctly held that the State Boundary Commission (SBC) has the authority to determine the validity of an agreement made pursuant to the Intergovernmental Conditional Transfer of Property by Contract Act, 1984 PA 425, MCL 124.21 *et seq*. (Act 425)[.][9]

In *TeriDee LLC*, two of the issues we asked the parties to address were

> whether *Inverness Mobile Home Community v Bedford Twp*, 263 Mich App 241[, 687 NW2d 869] (2004), applies to the defendant townships' Agreement pursuant to the Intergovernmental Conditional Transfer of Property by Contract Act, 1984 PA 425, MCL 124.21 *et seq*. (Act 425); . . . [and] if so, whether the challenged provisions of the Act 425 Agreement were nevertheless authorized by Section 6(c) of Act 425, MCL 124.26(c)[.][10]

## II. STANDARD OF REVIEW AND INTERPRETIVE PRINCIPLES

Our Constitution requires that we review administrative agency decisions to determine whether they "are authorized by law."[11] The Administrative Procedures Act[12]

---

[8] *Clam Lake Twp v Dep't of Licensing & Regulatory Affairs*, 499 Mich 896 (2016); *TeriDee LLC v Haring Charter Twp*, 499 Mich 896 (2016).

[9] *Clam Lake Twp*, 499 Mich at 896, as amended 499 Mich 949 (2016).

[10] *TeriDee LLC*, 499 Mich at 896-897, as amended 499 Mich 950 (2016).

[11] Const 1963, art 6, § 28.

[12] MCL 24.201 *et seq*.

also governs our review of the Commission's final decisions.[13] We will set aside a Commission decision "if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following," including "[i]n violation of the constitution or a statute," "[i]n excess of the statutory authority or jurisdiction of the agency," or "[a]ffected by other substantial and material error of law."[14] An agency's statutory interpretations are entitled to "respectful consideration," but they "cannot conflict with the plain meaning of the statute."[15] We must also determine whether the decisions, findings, and rulings "are supported by competent, material and substantial evidence on the whole record,"[16] remaining sensitive to the deference owed to administrative expertise and not invading exclusive administrative fact-finding.[17]

"We review de novo a trial court's determination regarding a motion for summary disposition."[18] "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law."[19]

---

[13] MCL 123.1018 ("Every final decision by the commission shall be subject to judicial review in a manner prescribed in Act No. 197 of the Public Acts of 1952, as amended . . . ."); see also *Midland Twp v State Boundary Comm*, 401 Mich 641, 671-672; 259 NW2d 326 (1977).

[14] MCL 24.306(1).

[15] *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 108; 754 NW2d 259 (2008).

[16] Const 1963, art 6, § 28.

[17] *Midland Twp*, 401 Mich at 673.

[18] *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008).

[19] *Id*. at 467 (citation and quotation marks omitted).

Similarly, we review de novo the interpretation of statutes.[20] We interpret statutes to discern and give effect to the Legislature's intent, and in doing so we focus on the statute's text.[21] Undefined terms are presumed to have their ordinary meaning, unless they "have acquired a peculiar and appropriate meaning in the law," in which case we accord them that meaning.[22] The statute must be considered as a whole, "reading individual words and phrases in the context of the entire legislative scheme."[23] Unambiguous statutes are enforced as written.[24]

## III. ANALYSIS

## A. ACT 425 AGREEMENTS

We first address the scope of the Commission's power to review Act 425 agreements when considering an annexation petition.[25] The Commission, like other

---

[20] *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 85; 878 NW2d 816 (2016).

[21] *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016).

[22] MCL 8.3a.

[23] *Madugula v Taub*, 496 Mich 685, 696; 853 NW2d 75 (2014).

[24] *Id*.

[25] Appellees argue that the Townships did not properly preserve this issue and are otherwise estopped from raising it. We disagree and find that we may reach this issue because the Townships properly preserved it. Indeed, in the Townships' initial challenge to the annexation petition, they argued that the Commission had no authority because the Act 425 agreement had already transferred the land. Their basic argument—that the Commission lacks power to make certain determinations—has remained unchanged throughout the proceedings.

9

administrative agencies, only has the powers expressly granted to it or necessarily implied.[26] The Commission has authority over the incorporation and consolidation of local governments as well as over various alterations of those governments' boundaries.[27] With respect to the Commission's authority over annexation petitions, MCL 123.1011a grants the Commission "jurisdiction over petitions or resolutions for annexation as provided in [MCL 117.9]." That statute, in turn, tasks the Commission with "determining the validity of the petition or resolution" and endows it with the powers and

Appellees have also claimed that the Townships are judicially estopped from challenging *Casco Twp*, 243 Mich App 392, because in *TeriDee*, the Townships successfully relied on *Casco* to obtain partial dismissal under the primary jurisdiction doctrine. A party is judicially estopped from asserting a position inconsistent with one it successfully and unequivocally asserted in a prior proceeding. *Paschke v Retool Indus*, 445 Mich 502, 509; 519 NW2d 441 (1994). There is nothing inconsistent in the Townships' positions. In *TeriDee*, they claimed that *Casco* required the Commission, rather than the circuit court, to have the first opportunity to review the Act 425 agreement. In *Clam Lake*, the theory they offer, and prevail on, is that *Casco* gave the Commission too much authority to review Act 425 agreements, and that the statute limits review to determining whether an agreement is "in effect" under MCL 124.29. In both cases, the Commission can examine the agreement; the pertinent argument here, and the one that the Townships have consistently made, concerns the scope of that examination. Therefore, the Townships are not estopped from challenging this aspect of *Casco*.

[26] *Coffman v State Bd of Examiners in Optometry*, 331 Mich 582, 590; 50 NW2d 322 (1951); see also *Soap & Detergent Ass'n v Natural Resources Comm*, 415 Mich 728, 736; 330 NW2d 346 (1982) ("It is beyond debate that the sole source of an agency's power is the statute creating it. If a certain power . . . is withheld in the statute, the agency may not act.").

[27] *Midland Twp*, 401 Mich at 650. None of the statutory provisions regarding the Commission's authority over incorporation, consolidation, or reannexation expressly or impliedly pertain to Act 425 agreements. See, e.g., MCL 123.1008 (granting the Commission power over incorporation); MCL 123.1009 (listing criteria for incorporation); MCL 123.1012 to 1012a (addressing consolidation); MCL 123.1012b (addressing reannexation).

10

duties it normally has when reviewing incorporation petitions.[28] Those powers include the ability to consider, among other things, population statistics, the need for governmental services in the incorporated area, and the general effect on the entire community.[29] While these statutes furnish "broad powers concerning annexations,"[30] none mentions Act 425 agreements or purports to grant the Commission authority over them.

Next, we must consider whether Act 425 provides the Commission authority to review agreements created under that statute. Act 425 provides that "[t]wo or more local units may conditionally transfer property for a period of not more than 50 years for the purpose of an economic development project. A conditional transfer of property shall be controlled by a written contract agreed to by the affected local units."[31] An "economic development project" is defined, in relevant part, as the "land and existing or planned improvements suitable for use by an industrial or commercial enterprise, or housing development, or the protection of the environment, including, but not limited to, groundwater or surface water."[32]

---

[28] MCL 117.9(2).

[29] MCL 123.1009.

[30] *Owosso Twp v City of Owosso*, 385 Mich 587, 590; 189 NW2d 421 (1971).

[31] MCL 124.22(1). The "local units" refer to cities, townships, and villages. MCL 124.21(b).

[32] MCL 124.21(a).

Local governmental units must consider various factors when entering into an Act 425 agreement, including the natural environment, population statistics, the need for and cost of government services, existing services, and the general effects of the transfer.[33] These factors are very similar to the ones the Commission must consider when reviewing proposed incorporations and annexations.[34] And like the Commission, the local units must hold public hearings on their proposed actions.[35] This indicates that, with respect to conditional land transfers under Act 425, the local units do much of the same work that the Commission does in its areas of assigned responsibility.

Only one provision in Act 425 implicates the Commission, but it does so in a manner that circumscribes the Commission's involvement. MCL 124.29 states that "[w]hile a contract under this act is in effect, another method of annexation or transfer shall not take place for any portion of an area transferred under the contract." Thus, all that is required to preempt an annexation petition is for the Act 425 agreement to be "in effect." The ordinary meaning of "effect" is "the quality or state of being operative."[36]

---

[33] MCL 124.23.

[34] MCL 123.1009.

[35] Compare MCL 123.1008(3) ("At least 60 days but not more than 220 days after the filing with the commission of a sufficient petition proposing incorporation, the commission shall hold a public hearing at a convenient place in the area proposed to be incorporated."), with MCL 124.24(1) (providing that the "legislative body of each local unit affected by a proposed transfer of property under this act shall hold at least 1 public hearing before entering into a contract under this act").

[36] *Merriam-Webster's Collegiate Dictionary* (11th ed). See also *Black's Law Dictionary* (10th ed) (defining "effect" as the "result that an instrument between parties will produce on their relative rights, or that a statute will produce on existing law, as discovered from the language used, the forms employed, or other materials for construing it").

Because an Act 425 agreement conditionally transfers property, it is "in effect," or operative, when the property has been conditionally transferred. The statute designates when this occurs: "The conditional transfer of property pursuant to a contract under this act takes place when the contract is filed in the manner required by this section."[37]

Thus, the conditional land transfer takes place when the parties enter into the contract and file the appropriate documents with the county clerk and Secretary of State. At that point, the agreement is operative, or "in effect," and the agreement preempts any other method of annexation. Act 425 does not condition preemption on a finding that the contract is otherwise valid, and it does not expressly grant to the Commission the power to determine the agreement's validity. Instead, the Commission may only make an initial determination of whether the Act 425 agreement is operative, i.e., whether the contract was entered into by the parties and filed in accordance with the statute.[38]

Only one Court of Appeals case has essayed a serious interpretation of Act 425. In *Casco Twp*, landowners in Casco and Columbus Townships petitioned to have Richmond City annex their lands; however, Lenox Township had shortly before acquired

---

[37] MCL 124.30. The statute goes on to state:

> After the affected local units enter into a contract under this act, the clerk of the local unit to which the property is to be conditionally transferred shall file a duplicate original of the contract with the county clerk of the county in which that local unit, or the greater part of that local unit, is located and with the secretary of state. That county clerk and the secretary of state shall enter the contract in a book kept for that purpose. The contract or a copy of the contract certified by that county clerk or by the secretary of state is prima facie evidence of the conditional transfer. [*Id*.]

[38] MCL 124.30.

13

the land through two Act 425 agreements.[39]  As in the present case, the Commission suspected the agreements were a ploy to avoid annexation and rejected them as invalid.[40] The Court of Appeals affirmed.[41]

In *Casco Twp*, the Court of Appeals erred by concluding that MCL 124.29 authorizes the Commission to examine an Act 425 agreement's validity rather than simply to determine its effectiveness.  The Court interpreted MCL 124.29 to "expressly require[] an Act 425 agreement that is 'in effect' and, therefore, necessitates a valid agreement.  Consequently, this statutory bar to the commission's consideration of an annexation petition requires an agreement that fulfills the statutory criteria . . . ."[42] Accordingly, the Commission could canvass the agreement for violations of the Act 425 "criteria."[43]

The problem with this analysis is that an Act 425 agreement preempts annexation when the agreement is "in effect."  The statute makes no mention of validity.  The Legislature could have employed this potentially broader term had it intended the Commission to wield more expansive review powers.  For example, the Legislature expressly provided the Commission power to examine "the validity of the [annexation]

---

[39] *Casco Twp*, 243 Mich App at 399.

[40] *Id*. at 396.

[41] *Id*. at 395.

[42] *Id*. at 398-399.

[43] *Id*.

14

petition . . . ."[44]  No such language appears in Act 425; instead, as mentioned above, the agreement must merely be "in effect," and effectiveness occurs when the local units have entered into and properly filed the agreement.[45]

In sum, *Casco* misinterpreted Act 425, and we take this opportunity to overrule it. The plain language of the Act provides that the Commission must find any annexation petition preempted if a relevant Act 425 agreement is "in effect."  In that situation, the Commission lacks the power to make any further determination of the agreement's validity.

Here, there is no dispute that the parties had entered into the Act 425 agreement and that it was properly filed with the Wexford County Clerk and the Secretary of State at the time the Commission considered the annexation petition.[46]  Accordingly, the

---

[44] MCL 117.9(2).

[45] Our opinion in *Shelby Charter Twp v State Boundary Comm*, 425 Mich 50; 387 NW2d 792 (1986), does not, as *Casco* asserted, support a contrary conclusion.  There we addressed MCL 42.34, which exempted charter townships from annexation if they met certain statutory criteria.  *Id*. at 53.  One criterion was that the charter township provide water or sewer services.  MCL 42.34(1)(f).  We framed the issue narrowly as "whether the lower courts correctly construed [this statute] to require only the provision of any water or sewer services" rather than a non-*de minimis* amount.  *Shelby*, 425 Mich at 72. We determined that the Commissioner correctly construed the statute to require more than a *de minimis* level of services.  *Id*. at 72-77.  As we do in this case, *Shelby* merely specified what the Commission had to consider in order to determine whether the annexation was preempted.  Accordingly, *Shelby* does not implicitly stand for the proposition that the Commission has expanded authority over statutes related to annexation.

[46] The Commission's decision noted this filing, and the record contains a letter from the Department of State acknowledging receipt of the filing and assigning an effective date of June 10, 2013.

agreement was "in effect" and preempted TeriDee's annexation petition.[47]  We reverse the circuit court's decision to the contrary.[48]

## B.  ZONING ORDINANCES

We next consider whether the Townships' Act 425 agreement is void as against public policy for impermissibly contracting away Haring's legislative zoning authority. The Court of Appeals concluded that it was.  To reach this result, it first found that the Act 425 agreement required Haring to enact specific zoning standards, thus restraining the Township's discretion in how to zone the property.[49]  In other words, it held that the agreement contracted away Haring's zoning powers.  Relying on the general proposition that such contract zoning is prohibited unless specifically authorized by statute,[50] the Court then examined whether the Legislature had authorized it in Act 425, specifically in MCL 124.26.[51]  That statute states, in relevant part:

> If applicable to the transfer, a contract under this act may provide for any of the following:

*   *   *

---

[47] MCL 124.29.

[48] It is important to highlight the limits of our holding.  We do not opine on whether a party could seek to invalidate an Act 425 agreement in the circuit court on other grounds. We merely hold that the Commission, when faced with an annexation petition and an Act 425 agreement that is "in effect," must find the petition preempted.

[49] *TeriDee*, unpub op at 3-4.

[50] *Id*. at 2-3, citing *Inverness Mobile Home Community*, 263 Mich App at 247-248.

[51] *TeriDee*, unpub op at 5-6.

(c) The fixing and collecting of charges, rates, rents, or fees, where appropriate, and *the adoption of ordinances and their enforcement by or with the assistance of the participating local units.*[52]

The Court of Appeals concluded that this provision did not permit the local units to agree to zoning ordinances. A contrary interpretation, it feared, "reads more words into the statute than are present."[53] The plain language only allows the agreement to provide for the adoption and enforcement of ordinances; it does not state that the "agreement may provide for the manner in which the participating local units will adopt ordinances, such as dictating how a local unit must zone or rezone the property."[54] It does "nothing more than determin[e] which local unit has jurisdiction over the property . . . and does not necessarily encompass the right to contract zone."[55]

We disagree with this analysis of MCL 124.26(c) and hold that the statute authorizes the Townships' zoning provisions.[56] We find nothing in the provision limiting the local units to a determination of which unit has jurisdiction. It is MCL 124.28,[57] not MCL 124.26(c), that allows the units to select which side has jurisdiction and for what

---

[52] MCL 124.26 (emphasis added).

[53] *TeriDee*, unpub op at 6.

[54] *Id*.

[55] *Id*. at 6-7.

[56] Because the statute permits these provisions, *Inverness Mobile Home Community*, 263 Mich App at 247-248, is inapplicable.

[57] MCL 124.28 ("Unless the contract specifically provides otherwise, property which is conditionally transferred by a contract under this act is, for the term of the contract and for all purposes, under the jurisdiction of the local unit to which the property is transferred.").

purposes. We must reject the Court of Appeals' analysis. Instead, we interpret MCL 124.26(c) to authorize local units to bargain over the adoption of ordinances, which includes bargaining over their content and substance.

The only remaining question is whether a zoning ordinance is an "ordinance" under MCL 124.26(c). The Court of Appeals thought not, because the statute does not mention zoning. But no specific types of ordinances are named in the statute. Therefore, the Court of Appeals' observation does not end the inquiry of whether a zoning ordinance qualifies under the statute as an "ordinance." An "ordinance" is simply "a law set forth by a governmental authority," specifically "a municipal regulation."[58] Michigan statutes and caselaw are rife with references to zoning regulations as ordinances, which demonstrate that an "ordinance" can zone.[59] Accordingly, when MCL 124.26(c) says "ordinance" and does not expressly exclude zoning ordinances, that term must be read to include them.

---

[58] *Merriam-Webster's Collegiate Dictionary* (11th ed). See also *Black's Law Dictionary* (10th ed) (defining "ordinance" as "[a]n authoritative law or decree," especially "a municipal regulation . . . on matters that the state government allows to be regulated at the local level").

[59] See, e.g., MCL 125.3201(1) ("A local unit of government may provide by zoning ordinance for the regulation of land development and the establishment of 1 or more districts within its zoning jurisdiction . . . ."); *Kyser v Kasson Twp*, 486 Mich 514, 529; 786 NW2d 543 (2010) ("[A] zoning ordinance is presumed to be reasonable, and a person challenging *such an ordinance* carries the burden . . . .") (emphasis added); *Paragon Props Co v City of Novi*, 452 Mich 568, 574; 550 NW2d 772 (1996) ("Because *zones established by ordinance* will not always reflect the realities of all land controlled by *a zoning ordinance* . . . .") (emphasis added); *Bengston v Delta Co*, 266 Mich App 612, 614; 703 NW2d 122 (2005) ("Because the township *ordinance zoning the property* for commercial use is controlling . . . .") (emphasis added).

From here, completing the statutory analysis is syllogistic. MCL 124.26(c) permits the local units to specify the content and substance of ordinances in their Act 425 agreement, and a zoning ordinance is an ordinance for purposes of the statute. It follows that MCL 124.26(c) allows the units to specify the content and substance of *zoning* ordinances in their Act 425 agreement. As applied here, MCL 124.26(c) authorizes the Townships' zoning provisions.[60]

Neither the parties nor the courts below suggest any reason why the Legislature would be prohibited from authorizing this form of contract zoning. True, the zoning power "constitutes a legislative function" that municipalities may exercise.[61] But a township "has no inherent power to zone" and can only do so to the extent the power is granted by the Constitution or Legislature.[62] Accordingly, the Legislature can empower—and has empowered[63]—municipalities to zone or take other action by agreement even though the agreement will bind those municipalities in the future and constrain their legislative discretion. As a leading treatise notes, "Statutes and charters sometimes authorize municipal boards to make contracts which will extend beyond their

---

[60] It is notable that since Haring derives its zoning authority from the Act 425 agreement, Haring would have no authority to zone the transferred lands but for the agreement. Thus, the agreement does not contract away any zoning powers Haring would have otherwise possessed.

[61] *Kyser*, 486 Mich at 520.

[62] *City of Livonia v Dep't of Social Servs*, 423 Mich 466, 493-494; 378 NW2d 402 (1985); see also *Whitman v Galien Twp*, 288 Mich App 672, 679; 808 NW2d 9 (2010) ("A local unit of government may regulate land use through zoning only to the limited extent authorized by that legislation.").

[63] See, e.g., MCL 125.3405 (authorizing conditional rezoning).

19

own official term, and the power of the legislature in this respect is well settled."[64] And, indeed, our Constitution encourages legislation such as Act 425 that allows local governments to "enter into contractual undertakings or agreements with one another . . . for the joint administration of any of the functions or powers which each would have the power to perform separately . . . [or to] transfer functions or responsibilities to one another . . . ."[65]

Accordingly, the Legislature in Act 425 enabled local units to contract for zoning. We reverse the Court of Appeals' contrary conclusion.

## IV. CONCLUSION

In *Clam Lake*, we hold that the Commission, when faced with an Act 425 agreement in annexation proceedings, may only review whether the agreement is "in effect."[66] An agreement is "in effect" if it is entered into and properly filed.[67] Here, those conditions were met, and the Commission and circuit court erred by invalidating the agreement on other grounds. Accordingly, TeriDee's annexation petition was

---

[64] 10A McQuillin, Municipal Corporations (3d ed, 2009), § 29.102, p 67. See also 1 Salkin, Am Law Zoning (5th ed), § 9:21, p 9-65 ("It is clear that if conditional zoning . . . is 'contract zoning' in the sense that the municipality has bargained away a portion of its zoning power, such zoning is unlawful except in the unusual situation where a statute authorizes agreements between governmental units."); 83 Am Jur 2d, Zoning and Planning, § 38, p 75 ("Absent valid legislative authorization, contract zoning is impermissible . . . .").

[65] Const 1963, art 7, § 28.

[66] MCL 124.29.

[67] MCL 124.30.

preempted, and we reverse the circuit court's decision.  In *TeriDee*, we hold that Act 425 authorizes local units such as the Townships to provide for zoning ordinances in their conditional land transfer agreements.  The Townships properly included such provisions in their agreement, and we reverse the Court of Appeals' decision to the contrary.  We remand both cases to the circuit court for further proceedings consistent with this opinion.[68]

David F. Viviano
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder

---

[68] Because these holdings fully resolve the appeals, we do not address the other issues raised in our grant orders.

21