*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WYOMING DISCOUNT PHARMACY LLC,
MAYA PHARMACY, LLC, SEAWAY
PHARMACY, PC, REDFORD DISCOUNT
PHARMACY, PLLC, FORD TEL DRUGS, INC.,
doing business as VITAL PHARMACY, KAY
PHARMACY, INC., doing business as KAY
PHARMACY, KAY PHARMACY & HME, and
KAY PHARMACY & HOME MEDICAL
EQUIPMENT, and KIRTLAND CORP., doing
business as NEW MILLENNIUM DRUGS,

UNPUBLISHED
July 23, 2020

Plaintiffs-Appellants,

v

No. 348464
Court of Claims
LC No. 18-000237-MM

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

Defendant-Appellee.

Before: FORT HOOD, P.J., and JANSEN and TUKEL, JJ.

PER CURIAM.

Plaintiffs, Wyoming Discount Pharmacy LLC (Wyoming); Maya Pharmacy, LLC (Maya); Seaway Pharmacy, PC (Seaway); Redford Discount Pharmacy, PLLC (Redford); Ford Tel Drugs, Inc. (Ford Tel), doing business as Vital Pharmacy; Kay Pharmacy, Inc. (Kay), doing business as Kay Pharmacy, Kay Pharmacy & HME, and Kay Pharmacy & Home Medical Equipment; and Kirtland Corp. (Kirtland), doing business as New Millennium Drugs, appeal as of right an order issued by the Court of Claims, granting summary disposition in favor of defendant, the Department of Health and Human Services (DHHS). Plaintiffs challenged a number of defendant's audits in which defendant concluded that Medicaid had overpaid plaintiffs for services. The Court of Claims granted summary disposition under MCR 2.116(C)(4) (lack of subject-matter jurisdiction) because all plaintiffs failed to exhaust their administrative remedies by not completing the administrative review procedure. The Court of Claims also granted summary disposition under MCR 2.116(C)(7) (waiver) as to plaintiffs Wyoming, Redford, and Kirtland because they released

-1-

any related claims against defendant in the repayment agreements they entered into with defendant. The Court of Claims lastly granted summary disposition under MCR 2.116(C)(8) (failure to state a claim) as to all plaintiffs, holding that plaintiffs' complaint failed to state an actionable due-process claim, and failed to state a claim under the Administrative Procedures Act (APA), MCL 24.201 *et seq*., because the APA does not require defendant to promulgate formal rules governing the challenged audits. We affirm.

## I. BACKGROUND

Defendant's Office of Inspector General (OIG) conducted audits of payments to pharmacies for prescriptions filled through Medicaid, as authorized by MCL 333.26368 and various sections of the Michigan Medicaid Provider Manual. The Manual includes a provision authorizing prepayment and postpayment audits for the purpose of confirming that a provider billed Medicaid for medications actually dispensed. The Manual also contains provisions directing providers to maintain certain fiscal records for seven years and specifically directing pharmacies to maintain documentation showing compliance with Medicaid policies, such as accurate information about the number of days' supply of a prescription as well as the number of prescriptions filled but not picked up. Specific to pharmacies, the Manual also states:

> In addition to all other documentation required under state law, federal law, and MDHHS policy, pharmacy providers must maintain invoices, manufacturer and/or wholesaler sales records, distributor delivery records to the provider, inventory transfer records, provider payment records, and all other records necessary to support the size and quantity of the goods paid for by Medicaid during the audit/review period. Failure to do so will result in the recoupment of pharmacy funds related to unsupported Medicaid claims. In the event inventory for any such product cannot be substantiated through reliable documentation for the beginning of the audit/review period, MDHHS may assume that the beginning and ending inventory quantities are the same for that product. For the purposes of this policy, the "audit/review period" shall be a period defined by MDHHS.

OIG audited the plaintiff pharmacies to determine whether they could substantiate their billings for prescriptions to Medicaid. OIG mailed notices of preliminary findings to each pharmacy, stating what records were reviewed and concluding that each pharmacy was overpaid. The notices stated that the pharmacies could notify OIG of their disagreement or submit additional documentation. Wyoming, Seaway, Redford, Kay, and Kirtland responded with additional documentation, which led OIG to reduce the assessments of the amounts overpaid. Maya and Ford Tel also responded, but without submitting additional documentation. OIG slightly reduced Ford Tel's overpayment assessment and maintained the original overpayment assessment against Maya. The final notices stated that the pharmacies could notify OIG of their disagreement or request an internal conference or administrative hearing, while failure to respond within 30 days would result in the initiation of recovery. Wyoming, Redford, and Kirtland entered into repayment agreements that included a provision in which the pharmacy agreed to release any claims against defendant related to the overpayment reviews. Maya entered into a settlement agreement with defendant. Seaway, Ford Tel, and Kay requested administrative hearings. By the time defendant filed its motion for summary disposition in the Court of Claims, Ford Tel and Kay had received final

-2-

administrative orders, and Seaway was awaiting a final administrative decision. None of the plaintiffs fully exhausted the administrative remedies available to them.

Plaintiffs filed a complaint in the Court of Claims, challenging the manner in which the audits were conducted. Plaintiffs' allegations cited the provisions in the Manual governing document retention and the purpose of the audits, and plaintiffs summarized the procedural history of each pharmacy's audit. Plaintiffs stated that the documents listed in the Manual would have produced accurate results, but they alleged that defendant used a "workflow tool" known as a "Drug Utilization Report ('DUR')" that did not accurately reflect the information sought and that inevitably led to discrepancies between plaintiffs' prescriptions and plaintiffs' billings. Plaintiffs claimed that defendant's failure to promulgate rules governing the audits violated the APA. Plaintiffs further claimed that defendant's failure to announce an audit procedure violated plaintiffs' right to due process by failing to provide adequate notice and a meaningful opportunity to be heard.

Defendant moved for summary disposition under MCR 2.116(C)(4), (C)(7), and (C)(8). Defendant argued that the Court of Claims lacked subject-matter jurisdiction because plaintiffs failed to exhaust their administrative remedies by failing to see the administrative process through to completion. Defendant alleged in the alternative that summary disposition was appropriate under MCR 2.116(C)(7) as to Wyoming, Redford, and Kirtland because they agreed to release their claims against defendant. Lastly, defendant argued that plaintiffs failed to state a claim upon which relief could be granted because the APA did not require defendant to promulgate a rule governing the audit process and because plaintiffs had notice of the overpayment findings and an opportunity to contest them. The Court of Claims agreed with defendant and granted summary disposition in defendant's favor under MCR 2.116(C)(4), (C)(7), and (C)(8).

## II. DISCUSSION

"This Court reviews de novo a trial court's ruling on a motion for summary disposition." *Anzaldua v Neogen Corp*, 292 Mich App 626, 629; 808 NW2d 804 (2011). This Court also reviews de novo matters of subject-matter jurisdiction. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 98; 693 NW2d 170 (2005). "Although this Court reviews constitutional questions de novo, unpreserved issues are reviewed for plain error affecting substantial rights." *Saginaw Ed Ass'n v Eady-Miskiewicz*, 319 Mich App 422, 450-451; 902 NW2d 1 (2017).

### A. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiffs first argue that they were not required to exhaust their administrative remedies because they raised a purely constitutional claim and because they are challenging only the absence of an audit procedure, not the results of their individual audits. We disagree.

"Summary disposition for lack of jurisdiction under MCR 2.116(C)(4) is proper when a plaintiff has failed to exhaust its administrative remedies." *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 50; 620 NW2d 546 (2000). When reviewing a summary disposition ruling under MCR 2.116(C)(4), this Court considers the pleadings in addition to other documentation. *L & L Wine & Liquor Corp v Liquor Control Comm*, 274 Mich App 354, 356; 733 NW2d 107 (2007).

When a state agency has "an administrative grievance procedure subject to judicial review," the plaintiff must generally exhaust its administrative remedies "before filing suit in the circuit court." *Rudolph Steiner Sch of Ann Arbor v Ann Arbor Charter Twp*, 237 Mich App 721, 731; 605 NW2d 18 (1999). "It is presumed that an administrative agency will correct its errors if given a chance to do so." *Papas v Mich Gaming Control Bd*, 257 Mich App 647, 664; 669 NW2d 326 (2003). The exhaustion requirement serves several purposes: "(1) an untimely resort to the courts may result in delay and disruption of an administrative scheme; (2) any type of appellate review is best made after the agency has developed a full record; (3) resolution of the issues may require the technical competence of the agency, and (4) the administrative agency's settlement of the dispute may render a judicial resolution unnecessary." *Genesis Ctr PLC v Fin & Ins Serv Comm'r*, 246 Mich App 531, 543; 633 NW2d 834 (2001). Exhaustion of administrative remedies is not required, however, "before filing a claim based on a constitutional issue." *Blair v Checker Cab Co*, 219 Mich App 667, 671; 558 NW2d 439 (1996).

First, plaintiffs raised a statutory claim that is subject to the exhaustion requirement. The second count of plaintiffs' complaint raised a statutory claim under the APA, alleging that defendant violated the APA by failing to promulgate rules governing the audit process to which plaintiffs were subjected. Plaintiffs continue to make this argument. Therefore, plaintiffs' claim is not purely constitutional.

Second, as the Court of Claims noted, factual development would aid judicial review of plaintiffs' due-process claim. Both plaintiffs' APA claim and due-process claim are premised on defendant's alleged failure to establish an audit process. This overlap demonstrates why exhaustion of plaintiffs' administrative remedies was required. Courts will not unnecessarily reach constitutional issues that are adequately remedied through other avenues. *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993). Although an administrative agency does not have the authority to rule on a constitutional claim, it "has a duty to interpret its enabling statutes in ways that avoid raising constitutional issues." *Saginaw Ed Ass'n*, 319 Mich App at 450 n 7. A successful APA claim may have obviated the necessity of pursuing a due-process challenge, but plaintiffs' failure to pursue an APA claim fully in the administrative proceeding leaves unanswered the question whether it would have been necessary for a court to reach the constitutional claim.

Moreover, exhaustion of administrative remedies would have allowed for further factual development, which was necessary in this case because, again, as the Court of Claims noted, plaintiffs' procedural due-process challenge was "intertwined with factual issues that should have been the subject of administrative proceedings." For example, plaintiffs describe the auditors' use of a workflow tool that allegedly inflated the overpayment amounts. Factual development of information that was contained in the document used and what documentation defendant should have used instead would help illuminate the bases of plaintiffs' claims—statutory and constitutional. Although plaintiffs insist that they are not challenging the results of the individual audits, it is not clear why plaintiffs could not have produced their proposed alternative documentation in an administrative proceeding to show why the audit process itself was inadequate. Further, defendant clearly used some kind of procedure to conduct the audits, demonstrated by the notices of preliminary findings summarizing the documents reviewed and the results of that review. Factual development of the types of records requested, the records produced, and what information those records did or did not contain, in addition to whether these records are

typically requested and reviewed during these types of audits, would aid in the evaluation of plaintiffs' claims. Accordingly, plaintiffs' contention that defendant used no procedure at all oversimplifies the matter and underestimates the usefulness of factual development.

Plaintiffs state that defendant should be judicially estopped from arguing that plaintiffs failed to exhaust their administrative remedies because defendant has argued in other proceedings that constitutional claims are beyond the scope of administrative proceedings. Judicial estoppel prevents a party from gaining an unfair advantage by taking inconsistent positions in different cases. *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 488-489; 822 NW2d 239 (2012). In this case, defendant is arguing that plaintiffs should have participated fully in the available administrative review process because their claims, which include an APA claim, are not solely constitutional and because plaintiffs' claims require factual development. In raising these arguments, defendant implicitly agrees that administrative remedies for purely constitutional claims need not be exhausted. Therefore, plaintiffs have not shown that defendant has taken inconsistent positions by arguing in another case that a purely constitutional claim is not subject to administrative review.[1]

With all of that in mind, we conclude that, as a result of the APA claim and the necessity of factual development of the bases of plaintiffs' claims, the Court of Claims did not err by concluding that plaintiffs' failure to exhaust their administrative remedies was a ground for

---

[1] We note plaintiffs' reliance on *Bauserman v Unemployment Ins Agency*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 333181). In that case, the plaintiffs alleged that the defendant agency had garnished income tax returns and wages

> (1) without providing "required notice of the bases asserted for disqualification [of unemployment benefits,]" or a hearing, (2) by not allowing plaintiffs to present evidence in their own defense, and (3) by using an automated computerized system "for the detection and determination of [alleged] fraud cases," which does not comport with due process. [The p]laintiffs specifically alleged that the Agency uses the Michigan Integrated Data Automated System (MiDAS), "an automated decision-making system" to spot suspected fraud in the receipt of unemployment benefits, and that MiDAS "initiates an automated process" that can result in an individual being disqualified from receiving benefits, as well as having penalties imposed and being subjected to criminal prosecution. All of this, [the] plaintiffs allege[d], occurs without [the] plaintiffs being provided with notice, an opportunity to be heard and being allowed to present evidence in their defense. [*Bauserman*, ____ Mich App at ___; slip op at 1, 11 (first alteration in original).]

In this case, there is no doubt that plaintiffs were afforded notice and an opportunity to challenge the audits. Moreover, as further addressed in section C. 2. of this opinion, we agree with the Court of Claims that plaintiffs failed to state a cognizable due-process claim to begin with. Lastly, *Bauserman* came to this Court on remand from the Supreme Court to specifically address whether the plaintiffs in that case alleged a cognizable constitutional tort claim without reference to any other claim the *Bauserman* plaintiffs could have made that would have required exhaustion of administrative remedies. With all of that in mind, we conclude that *Bauserman* is not controlling.

summary disposition under MCR 2.116(C)(4).  Although plaintiffs' failure to exhaust administrative remedies is dispositive, to be thorough, we address additional issues raised by plaintiffs and addressed by the Court of Claims below.

## B.  RELEASE

Plaintiffs argue that Wyoming, Redford, and Kirtland could not have waived their constitutional rights because they could not make a knowing, intelligent, and voluntary waiver in the absence of a transparent audit procedure.  We disagree.

Summary disposition "is appropriate because of release."  MCR 2.116(C)(7).  A party may use documentation to support a motion for summary disposition under MCR 2.116(C)(7).  *Clay v Doe*, 311 Mich App 359, 362; 876 NW2d 248 (2015).  "The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant."  *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).  The pleadings and any evidence submitted should be construed in the light most favorable to the nonmoving party.  *Anzaldua*, 292 Mich App at 629.  "The scope of a release is governed by the intent of the parties as it is expressed in the release.  If the text in the release is unambiguous, the parties' intentions must be ascertained from the plain, ordinary meaning of the language of the release."  *Rinke v Auto Moulding Co*, 226 Mich App 432, 435; 573 NW2d 344 (1997).  In this case, Wyoming, Redford, and Kirtland entered into repayment agreements with defendant in which the three plaintiffs agreed to "fully and finally release" defendant "from any claims" the undersigned plaintiffs "have asserted, could have asserted or may assert in the future against defendant" related to the overpayment cases.  This language expresses a clear intent to release defendant from all claims plaintiffs could assert against defendant in relation to the overpayments.  Accordingly, the Court of Claims did not err by interpreting this language to bar the claims of plaintiffs Wyoming, Redford, and Kirtland against defendant.

We reject plaintiffs' assertion that they were incapable of making a knowing, intelligent, and voluntary waiver of their constitutional rights.  Plaintiffs' allegations regarding the deficiencies in the way the audits were conducted show that plaintiffs knew why the audit procedure was inadequate when they went through it.  Additionally, the notices of preliminary findings described the review process and the overpayment amount calculated, and the notices invited plaintiffs to communicate with defendant about how that amount was calculated and how it could be challenged.  It is unclear why plaintiffs would not have had enough information to conclude, in their opinion, that the procedure used to audit them was constitutionally inadequate before signing the agreements containing the release.  The Court of Claims properly concluded that Wyoming, Redford, and Kirtland waived their claims, including their constitutional claim, against defendant in relation to the audits.

## C.  FAILURE TO STATE A CLAIM

Plaintiffs lastly argue that the Court of Claims erred by concluding that plaintiffs failed to state a claim on which relief could be granted.  We disagree.

Summary disposition under MCR 2.116(C)(8) is proper when "[t]he opposing party has failed to state a claim on which relief can be granted."  "A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone."  *Smith v Stolberg*,

231 Mich App 256, 258; 586 NW2d 103 (1998). "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Maiden*, 461 Mich at 119. Summary disposition under MCR 2.116(C)(8) is warranted when no factual development could possibly justify recovery. *Adair v Michigan*, 470 Mich 105, 119; 680 NW2d 386 (2004).

### 1. APA

Plaintiffs argue that they stated a claim under the APA by arguing that defendant was required to promulgate rules governing the audits conducted in this case under MCL 24.233(1) and (2). We disagree.

Statutory interpretation begins with the language of the statute for the purpose of determining and giving effect to the Legislature's intent. *Potter v McLeary*, 484 Mich 397, 410-411; 774 NW2d 1 (2009). "All other things being equal, a more specific statutory provision controls over a more general statutory provision." *Telford v Michigan*, 327 Mich App 195, 199; 933 NW2d 347 (2019). "A statute must be read in conjunction with other relevant statutes to ensure that the legislative intent is correctly ascertained. The statute must be interpreted in a manner that ensures that it works in harmony with the entire statutory scheme." *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009).

MCL 24.233(1) and (2) govern the promulgation of rules describing an agency's structure and operation and rules describing an agency's procedures. The APA defines a "rule" and the relevant exception as follows:

> "Rule" means an agency regulation, statement, standard, policy, ruling, or instruction of general applicability that implements or applies law enforced or administered by the agency, or that prescribes the organization, procedure, or practice of the agency, including the amendment, suspension, or rescission of the law enforced or administered by the agency. Rule does not include any of the following:
>
> * * *
>
> (q) A policy developed by the department of health and human services under the authority granted in section 111a of the social welfare act, 1939 PA 280, MCL 400.111a, to implement policies and procedures necessary to operate its health care programs in accordance with an approved state plan or in compliance with state statute. [MCL 24.207(q).]

MCL 400.111a states that defendant's director

> *may* establish policies and procedures that he or she considers appropriate, relating to the conditions of participation and requirements for providers established by [MCL 400.111b] and to applicable federal law and regulations, to assure that the implementation and enforcement of state and federal laws are all of the following:
>
> (a) Reasonable, fair, effective and efficient.

(b) In conformance with law.

(c) In conformance with the state plan for medical assistance adopted under section 10 and approved by the United States department of health and human services. [MCL 400.111a(1) (emphasis added).]

MCL 400.111a(7)(d) permits defendant to "[r]ecover payments to a provider in excess of the reimbursement to which the provider is entitled." When the agency seeks to recoup overpayment for services, the burden is on the healthcare provider to show that it did not seek excessive payment for services, not on the agency to show that it erroneously overpaid the provider. *Rutherford v Dep't of Social Servs*, 193 Mich App 326, 329; 483 NW2d 410 (1991).

These provisions show that defendant was not required to promulgate rules to recover overpayments. The word "may" is generally permissive unless context requires it to be interpreted in a mandatory sense. *Mull v Equitable Life Assurance Society of the US*, 444 Mich 508, 519; 510 NW2d 184 (1994). In this case, in light of the APA's exemption of MCL 400.111a from the rulemaking requirement in MCL 24.207(q), the word "may" in MCL 400.111a is properly read as permissive. Plaintiffs maintain that MCL 24.207(q) still requires defendant to establish a "policy in lieu of promulgating a rule." This distinction is not supported by the general definition of a rule in MCL 24.207 or the exception to that definition in MCL 24.207(q), both of which refer to a "policy" as one of many forms a "rule" may take. The permissive language of MCL 400.111a shows that defendant is not required to formulate "policies and procedures" governing participation in Medicaid. In short, the APA does not require defendant to promulgate a rule as prescribed by the APA or a policy governing the challenged audits, and the Court of Claims did not err by concluding that plaintiffs failed to state a claim under the APA.

Moreover, plaintiffs' argument is inconsistent with the allegations in the complaint. Plaintiffs stated that the Medicaid Provider Manual directs pharmacies to maintain certain types of documents substantiating the "the size and quantity of goods" billed to Medicaid. Plaintiffs similarly stated that the Medicaid Provider Manual "only establish[ed] what types of records pharmacies must maintain to demonstrate that a sufficient inventory was purchased to justify the quantity billed to Medicaid." By plaintiffs' admission, the Manual directed pharmacies to maintain certain records and for what purpose. In a comparable case involving a motor fuel tax, an agency bulletin, which was excluded from the APA's definition of a rule under a different exception, specified what invoices should be maintained and adequately supported the results of an audit because the taxpayer failed to produce the type of invoices described in the bulletin. *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 44-46; 73 NW2d 822 (2005). In this case, plaintiffs' allegations show that plaintiffs were well aware of what documents to maintain and the purpose of the audits, so they should not have been surprised by how their billing of services to Medicaid could be questioned during an audit. As pharmaceutical providers, plaintiffs should know what documentation is required to substantiate their claims for payment of medications prescribed and dispensed, and they bore the burden of showing that the overpayment results were inaccurate.

Plaintiffs further alleged that OIG did not review the appropriate documents during the audits and specified what type of information OIG should have reviewed. Plaintiffs alleged that no established procedure existed to allow the pharmacies to challenge the overpayment assessments before describing the procedure that was used in their individual audits. Plaintiffs

stated that they could not challenge the overpayment assessments until the process was complete. However, plaintiffs also alleged that all but one of the pharmacies challenged the preliminary findings, and all of the pharmacies that challenged the preliminary findings had their overpayment assessments reduced. When a provider has notice of the method used to calculate the overpayment and an opportunity to contest that method and the result reached, the agency has not violated the APA. *Rutherford*, 193 Mich App at 330. Plaintiffs alleged that they did not have notice of the method used to calculate the overpayments, but their allegations related to what types of documents they should maintain and the purpose of the audits, and six of seven pharmacies' successful efforts to reduce the overpayment assessments, undermine plaintiffs' general theme that they had no way of knowing how to defend against an audit.

Plaintiffs also cited OIG's implementing legislation, MCL 333.26368(III)(A)(14) and (15), in support of their APA claim. MCL 333.26368 authorized the creation of the OIG, and the cited provisions state as follows:

> (A) The Office of Health Services Inspector General shall conduct and supervise activities to prevent, detect, and investigate fraud, waste, and abuse in Health Services Programs. Specifically, the Office shall do all of the following:
>
> * * *
>
> (14) Promulgate rules or regulations relating to fraud, waste, and abuse under Sections 6, 9, and 10 of The Social Welfare Act, 1939 PA 280, MCL 400.6, 400.9, and 400.10, or other applicable law.
>
> (15) Develop procedures to collect overpayments, restitution amounts, and settlement proceeds. [MCL 333.26368(III)(A)(14) and (15).]

Plaintiffs argue that the Court of Claims ignored the "other applicable law" clause, which refers to the APA. As previously discussed, the APA's definition of a rule does not apply. Therefore, plaintiffs' reading of this statute to refer to the APA is unavailing, and the Court of Claims did not err by concluding that plaintiffs failed to state a claim under the APA or the enabling legislation.

## 2. DUE PROCESS

Plaintiffs also argue that they stated an actionable due-process claim when they alleged that defendant deprived plaintiffs of property without giving plaintiffs notice and an opportunity to be heard. We disagree.

"[P]rocedural due process requires that a party be provided notice of the nature of the proceedings and an opportunity to be heard by an impartial decision maker at a meaningful time and in a meaningful manner." *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 213-214; 761 NW2d 293 (2008). Plaintiffs' allegations refer to the types of documents to be maintained and for how long, and the purpose of the audits. Plaintiffs further alleged that they each received a notice of preliminary findings, that six of the seven pharmacies responded to the notices, and that the overpayment assessments were reduced for all six of the pharmacies that challenged the results. These allegations demonstrate that plaintiffs received notice of the overpayment assessments. The six pharmacies' responses to the notices and the reduction of all

-9-

of the challenged overpayment assessments show that plaintiffs had a meaningful opportunity to be heard. Accordingly, the Court of Claims did not err by concluding that plaintiffs failed to state a procedural due-process claim.

Plaintiffs further argue that the balancing test stated in *Mathews v Eldridge*, 424 US 319; 96 S Ct 893; 47 L Ed 2d 18 (1976), and employed by the Court of Claims, does not apply to their claim because they are challenging the total absence of a procedure, not the sufficiency of an existing procedure. The Court of Claims applied the balancing test to evaluate the alternative procedures posited by plaintiffs.[2] In *Mathews*, 424 US at 334, the United States Supreme Court stated that "resolution of the issue whether the administrative procedures provided here are constitutionally sufficient require analysis of the governmental and private interests that are affected." In this case, plaintiffs likewise challenge the constitutional sufficiency of the administrative procedures made available, so the governmental and private interests affected must be analyzed. Accordingly, their proposed alternative procedures were subject to the *Mathews* balancing test.

Plaintiffs argue in the alternative that, applying *Mathews*, defendant used the wrong documentation without adequate safeguards to deprive plaintiffs of their property and that the publication of an audit process would impose only a minimal burden on the government.

> [D]ue process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

---

[2] We should again address plaintiffs' reliance on *Bauserman* in this regard. In *Bauserman*, we noted that a cognizable constitutional tort had been alleged when the plaintiffs alleged that the defendant "systemically, and by way of concerted and coordinated actions, unlawfully intercepted [the plaintiffs] state and federal tax refunds, garnished their wages, and forced [the] plaintiffs to repay unemployment benefits that they had lawfully received." *Bauserman*, ___ Mich App at ___; slip op at 11. Again, *Bauserman* involved circumstances in which the plaintiffs alleged that they were not provided notice of the bases for their disqualification of unemployment benefits, were not provided a hearing, and were not permitted an opportunity to present evidence in their defense. *Id*. We also noted that we afforded "significant weight to the outrageousness of the misconduct" in that case:

> [The] plaintiffs allege that the [defendant], relying on an automated system, systemically engaged in a series of concerted actions that wrongfully accused thousands of innocent citizens of this state of fraud and the unlawful receipt of unemployment benefits without grounds for doing so. [*Id*. at ___; slip ip at 16.]

Again, there are no allegations in this case that plaintiffs were not presented an opportunity to be heard. Plaintiffs only argue that the administrative remedies offered to them were insufficient.

administrative burdens that the additional or substitute procedural requirement would entail.  [*Mathews*, 424 US at 334-335.]

In this case, plaintiffs focus on the second element, weighing the risk of an erroneous deprivation against the benefit of alternative procedural safeguards.  Plaintiffs' proposal that a published audit procedure would protect against the deprivation in this case is inconsistent with their allegations that they knew what documents should be retained and for how long, in addition to the purpose of the audit.

Plaintiffs further argue that defendant "arbitrarily chose to use a workflow tool rather than a billing report that led to predetermined false and inflated deficiencies against" plaintiffs.  Plaintiffs do not establish what additional *procedure* defendant should have used, however, when they argue that defendant should have used different documents, i.e., different *evidence*.  This Court has held that a " 'paper hearing,' " in which the decision maker reviewed documentation without hearing oral testimony, adequately accounted for the risk of erroneous deprivation.  *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 462; 688 NW2d 523 (2004).  In this case, plaintiffs had the opportunity to present what they believed to be the correct records after receiving the notices of preliminary findings, and plaintiffs alleged that Wyoming, Seaway, Redford, Kay, and Kirtland did so.  Plaintiffs' repeated assertions that they could not possibly know what to anticipate without a published audit procedure are undermined by their allegations regarding what documents they were required to maintain and the purpose of the audits.

Ultimately, procedural due process requires nothing more than notice and an opportunity to respond to the evidence.  *Hinky Dinky Supermarket, Inc v Dep't of Community Health*, 261 Mich App 604, 607; 683 NW2d 759 (2004).  The admitted ability of the pharmacies to respond to the notices of preliminary findings and to have the amount of the overpayments reduced as a result of those responses demonstrates that plaintiffs received what process was due.  That defendant did not promulgate and publish official rules for plaintiffs to review about the initial audit process is not dispositive on the issue.

Lastly, we note plaintiffs' argument that defendant violated their right to substantive due process by conducting the audits arbitrarily without established procedures and without adequate training for the auditors.  Plaintiffs first criticize the Court of Claims for failing to address plaintiffs' right to substantive due process.  Substantive due process asks whether the government arbitrarily deprived a party of a protected interest.  *Landon Holdings, Inc v Grattan Twp*, 257 Mich App 154, 173; 667 NW2d 93 (2003).  In contrast, procedural due process concerns the safeguards protecting against the deprivation of a protected interest, and it requires notice and an opportunity to be heard.  *Mettler Walloon*, 281 Mich App at 213-214.  In this case, plaintiffs alleged that they were deprived of notice and a meaningful opportunity to be heard regarding the audits, which were not conducted pursuant to a predetermined procedure.  To the extent that plaintiffs described the procedure as unfair and arbitrary, they did so in the context of outlining why they did not have adequate notice and an opportunity to be heard.  That is, plaintiffs did not raise a substantive due-process claim in the Court of Claims, and the court did not fail to address a claim that plaintiffs did not raise.  Plaintiffs cannot rely on a claim that was not raised in the complaint to argue that the Court of Claims erred by concluding that plaintiffs failed to state a claim.  Accordingly, plaintiffs' substantive due-process claim raised on appeal does not overcome the Court of Claims's determination that plaintiffs' complaint failed to state a claim on which relief could be granted.

In addition, plaintiffs cite the APA and the enabling legislation, MCL 333.26368, as the basis for the procedural and substantive due-process claims. We have already concluded that plaintiffs did not assert a viable claim under the APA and the enabling legislation. Moreover, if plaintiffs had a viable statutory claim, a constitutional due-process claim would be unnecessary.

## III. CONCLUSION

In summation, plaintiffs assert numerous legal challenges—the APA, OIG's enabling legislation, procedural due process, and substantive due process—with the same recurring theme that defendant's audits were conducted in the total absence of any policies or guidance. Plaintiffs' own allegations contradict this claim, particularly in light of the process afforded plaintiffs to present evidence via administrative procedures and to be heard. For all of the reasons detailed above, the trial court did not err in granting summary disposition to defendant.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Kathleen Jansen
/s/ Jonathan Tukel